THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

The OFFICE CANTONAL DES FAILLITES
DE LA REPUBLIQUE ET DU CANTON
GENEVE, acting in its capacity as
representative in the bankruptcy of AMOMA
SARL, a Swiss limited liability company,

               Plaintiff,

      v.

EXPEDIA, INC.,

               Defendant.

Case No.: 2:23-cv-00983-BJR

**EXPEDIA, INC.'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(b)(6)**

MOTION TO DISMISS
(Case No. 2:23-cv-00983)

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ............................................................................................................. 1

II. SUMMARY OF THE COMPLAINT ............................................................................ 3

   A. Background ................................................................................................................. 3

   B. Amoma's Allegations about trivago's Modifications to Allow More Targeted Advertising ................................................................................................................................... 4

   C. Amoma's Allegations Regarding Expedia ............................................................... 5

   D. Legal Proceedings .................................................................................................... 6

III. ARGUMENT ................................................................................................................. 6

   A. Amoma Fails to Allege a Plausible Claim for Attempted Monopolization under the Sherman Act ............................................................................................................... 7

      1. Amoma Fails to Allege Exclusionary Conduct by Expedia. ............................. 7

      2. Amoma Fails to Allege Antitrust Injury. ........................................................ 11

      3. Amoma Fails to Allege Facts Indicating That Expedia Had a Specific Intent to Monopolize a Relevant Market Through the Challenged Conduct. .......................... 13

      4. Amoma's Factual Allegations Fail to Make Plausible That Expedia Has a Dangerous Probability of Monopolizing the Alleged Market for Global Online Hotel Bookings. ............................................................................................................... 14

   B. Amoma's Washington Consumer Protection Act Claim Should Be Dismissed for the Same Reasons as Its Claim under Section 2 of the Sherman Act .................................. 16

   C. Amoma's Claims Are Time-Barred ........................................................................ 16

IV. CONCLUSION ............................................................................................................ 17

1    Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Expedia, Inc.
2  ("Expedia") respectfully moves to dismiss all claims in the Complaint filed by The Office
3  Cantonal des Faillites de la République et du Canton de Genève, acting in its capacity as
4  representative in the bankruptcy of Amoma Sarl ("Amoma") filed on June 30, 2023 (Dkt. No. 1)
5  for failure to state a claim upon which relief can be granted. Expedia files this motion following
6  two videoconferences of counsel, which took place on August 21 and 22, 2023, pursuant to
7  Section II.F of this Court's Standing Order for All Civil Cases.

8  ## I.    INTRODUCTION

9    Amoma, a Swiss company that offered online hotel booking services, alleges that it went
10  bankrupt in 2019 because trivago N.V. ("trivago"), one of the websites on which Amoma
11  advertised its services, modified its advertising bidding system, and Amoma could not adapt to
12  those changes. Now, more than four years after trivago announced and launched its modified
13  bidding system, Amoma has filed this Complaint in the U.S. against Expedia, a majority
14  shareholder in trivago. Assuming for purposes of this motion that Amoma's allegations are true, it
15  fails completely to state a claim for attempted monopolization under Section 2 of the Sherman
16  Antitrust Act, 15 U.S.C. § 2, or the Washington Consumer Protection Act ("CPA"), Wash. Rev.
17  Code. § 19.86.020.

18    The antitrust laws do not prohibit a company from seeking to improve its products in
19  response to customer demand even if some customers do not adapt well to those changes. Such a
20  prohibition would penalize companies for conduct that the antitrust laws seek to promote—
21  competing on the merits by improving product quality. That, however, is precisely what happened
22  here. Amoma alleges that trivago's major advertisers, including Booking.com ("Booking"), one
23  of Expedia's competitors, recommended that trivago update its advertising bidding system by
24  adding targeted bidding options. These "bid modifiers" permit advertisers to direct their
25  advertising to customers more accurately based on information (such as the expected length of
26  stay) provided by consumers in submitting their search queries. The Complaint further alleges that

MOTION TO DISMISS - 1
(Case No. 2:23-cv-00983)

**MORGAN LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

Amoma (and only Amoma) could not adapt to trivago's revisions to the advertising bidding system and that Amoma went bankrupt as a result. None of these alleged facts supports an antitrust claim.

Indeed, even if Amoma had some type of claim—which it does not—such a claim would be against trivago, the company with whom Amoma was dealing. Amoma apparently recognizes this fact because it filed separate proceedings concerning the same nucleus of facts against only trivago in France. The present Complaint asserts claims only against Expedia, a separate corporation, based upon the wholly conclusory assertion that Expedia directed trivago to modify its advertising system through its majority ownership of trivago. The Complaint alleges no facts indicating that Expedia actually did so.

More specifically, Amoma has failed to allege facts sufficient to establish *any* of the four required elements of its Sherman Act claim:[1]

1. Exclusionary conduct: The Complaint fails to allege facts that plausibly show that trivago's conduct excluded Amoma through anticompetitive means from advertising on trivago or, even less plausibly, that *Expedia*—a separate legal entity from trivago—excluded Amoma from advertising on trivago or anywhere else.

2. Antitrust injury: The Complaint alleges that trivago's actions harmed one competitor of Expedia—Amoma—and does not allege facts showing harm to competition in the alleged market. Where, as here, "the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury." *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).

3. Specific Intent to Monopolize: The Complaint is devoid of any facts supporting the implausible theory that Expedia required trivago to revise its bidding system—a step that Expedia's competitor, Booking, requested—with the specific intent to

---

[1] Amoma's claim under the CPA, which courts interpret consistently with federal antitrust laws, is based on the same allegations as the Sherman Act claim and fails for the same reasons.

MOTION TO DISMISS - 2
(Case No. 2:23-cv-00983)

MORGAN LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

eliminate Amoma and thereby to monopolize the alleged relevant market for global online hotel booking services.

4. <u>Dangerous Probability of Success</u>: There are no facts alleged in the Complaint indicating that trivago's revised bidding system created a dangerous probability that Expedia would monopolize the alleged global market for online hotel booking services. The Complaint alleges no facts regarding Expedia's share of the market or any increases in Expedia's share due to trivago's modifications to its bidding system. Indeed, more than four years later, the Complaint is unable to allege that Expedia is even the largest provider of global online hotel booking services.

Finally, Amoma's claims are barred by the statute of limitations because Amoma filed its Complaint more than four years after it learned of the changes to trivago's advertising bidding system.

Amoma's Complaint is nothing more than a belated, desperate attempt to recoup losses suffered due to its own inability to adapt to technological improvements in a fast-changing industry. It is not a proper U.S. antitrust case, and the Court should dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim under either Section 2 of the Sherman Act or the CPA.

## II.    SUMMARY OF THE COMPLAINT[2]

### A.    Background

The plaintiff, Amoma, was an online hotel booking service organized under Swiss law that began operating in 2013 and ceased operating in 2019. *See* Compl. ¶¶ 64–65, 104. Amoma competed with many other companies to enable consumers to book hotel rooms, including hotel websites (such as Marriot.com and Hilton.com), online travel agencies (such as Booking and

---

[2] Expedia accepts as true the non-conclusory, factual allegations in the Complaint solely for purposes of this motion to dismiss. *Dowers v. Nationstar Mortg.*, LLC, 852 F.3d 964, 969 (9th Cir. 2017) (accepting as true only non-conclusory allegations).

MOTION TO DISMISS - 3
(Case No. 2:23-cv-00983)

**MORGAN LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

1  Expedia), offline travel agencies, and other online accommodation providers (such as Airbnb).

2  *Id.* ¶¶ 1, 3, 22–25.

3      Companies that enable hotel bookings promote their offers through a wide range of

4  advertising and marketing options that include search engines (like Google or Bing), other

5  websites, phones, and more. *Id.* ¶¶ 22–23, 25, 35. These marketing options also include advertising

6  on sites that provide consumers with travel-related information, such as Google Hotel Ads,

7  Tripadvisor, Kayak, and trivago. *Id.* ¶¶ 23–25. The Complaint refers to these sites as "metasearch

8  engines, price comparison websites, or hotel price aggregators." *Id.* ¶ 23. These services "combine

9  the rates offered by hotels and online travel agencies into one place" and then "redirect the traveler

10  to the hotel or online travel agency's website to complete the booking." *Id.* ¶ 24. Expedia, Booking,

11  Amoma, individual hotels, and other companies advertised their hotel booking services on these

12  travel-information sites, including on trivago. *Id.* ¶¶ 33, 40, 67.

13  **B.  Amoma's Allegations about trivago's Modifications to Allow More Targeted**
14  **Advertising**

15      The Complaint alleges that, in April 2019, trivago informed Amoma that trivago planned

16  to revise its advertising bidding system and soon thereafter introduced new "bid modifiers" that

17  would allow advertisers to "increase or decrease their cost-per-click bids depending on certain

18  aspects of the customer's search." *Id.* ¶¶ 77–79, 81. For example, advertisers could adjust their

19  bids based on the traveler's search by length of stay in a hotel or desired travel dates. *Id.* at ¶81.

20  The Complaint acknowledges that trivago added bid modifiers in response to feedback from its

21  largest advertising customers, including one of Expedia's competitors, Booking, and explained

22  that trivago was seeking to improve its customers' return on advertising spend. *See id.* ¶¶ 79,

23  80–81. trivago indicated that bid modifiers would "afford more granularity and flexibility when it

24  comes to traffic acquisition and optimize return on advertising." *Id.* ¶ 79.

25      trivago allegedly launched bid modifiers for three advertisers in mid-June 2019, and on

26  June 19, 2019, trivago notified Amoma that it would launch bid modifiers for a portion of

MOTION TO DISMISS - 4
(Case No. 2:23-cv-00983)

**MORGAN LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL. (206) 407-2200 FAX. (206) 407-2224

Amoma's advertisements on July 1, 2019. *Id.* ¶¶ 83, 85. Throughout the implementation period, other advertisers successfully adjusted to the new bid modifiers. *Id.* ¶¶ 91−93, 108. trivago continued to make its advertising services available to Amoma and worked with Amoma as Amoma sought to adapt to the new bid modifiers. *Id.* ¶¶ 86−103. For example, in August 2019, trivago and Amoma communicated about Amoma's concerns about bid modifiers, *id.* ¶ 99, and trivago offered to handle Amoma's use of bid modifiers, which increased Amoma's share of top-offer positions, *id.* ¶¶ 100−01. Amoma's "performance in its top markets (Italy and France) remained stable and increased in August 2019 until August 18." *Id.* ¶ 93. Amoma does not allege that Expedia or trivago prevented Amoma from advertising on Google Hotel Ads, Tripadvisor, Kayak, or any other advertising service.

## C.    Amoma's Allegations Regarding Expedia

The Complaint alleges in conclusory fashion that Expedia controlled trivago and used that control to force trivago to adopt bid modifiers in an attempt to monopolize the alleged market. *Id.* ¶¶ 4, 19, 33−34, 76. The Complaint, however, fails to allege any facts indicating that Expedia *actually exercised any control right*s to require trivago to change its advertising bidding system. The Complaint alleges only that two of the seven-member supervisory board were Expedia employees "in 2019" and that two other Expedia employees were added "later." *Id.* ¶ 20. Moreover, trivago's annual reports, which are quoted in the Complaint, *id.* ¶¶ 33−34,[3] state that the supervisory board was barred from "issu[ing] instructions to the Managing Directors [of trivago] . . . ."[4]

---

[3] The annual reports quoted in the Complaint may be incorporated by reference into the complaint because "the document[s] form[] the basis of [Amoma's] claim" against Expedia. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ("[U]nlike judicial notice, a court 'may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'").

[4] *trivago, 2019* Annual Report (Form 20-F), at 83 (Mar. 6, 2020) [hereinafter "trivago 2019 Annual Report"], https://www.sec.gov/Archives/edgar/data/1683825/000168382519000008/trvg201820-fusgaap.htm; *id.* at Exhibit 2.1, Annex C, Art. 11, Appendix A; *id.* at Exhibit 2.1, Annex D, Art. 4. The Complaint does not allege any facts indicating that trivago operated as Expedia's alter ego or that Expedia used its ownership interest to require trivago to implement the changes to its bidding system in 2019.

MOTION TO DISMISS - 5
(Case No. 2:23-cv-00983)

1

### D.    Legal Proceedings

2      Amoma went bankrupt in early September 2019. *Id.* ¶ 9. On June 20, 2022, after nearly

3    three years of proceedings before the Swiss Bankruptcy authority, Amoma filed a complaint

4    against trivago in a French tribunal based on the same changes to trivago's advertising bidding

5    system that are at issue here (the "French Litigation").[5] The French Litigation is still pending.

6      On June 30, 2023, Amoma filed the present Complaint against Expedia asserting claims

7    under Section 2 of the Sherman Act and the CPA based on a theory that Expedia attempted to

8    monopolize an asserted market for global online hotel bookings by requiring trivago to revise its

9    advertising bidding system, which allegedly served to "forc[e] Amoma out" of that purported

10   market. *Id.* ¶ 112.

11   ## III.   ARGUMENT

12     To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege non-

13   conclusory facts sufficient to make each element of each claim not merely possible but "plausible

14   on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S.

15   544, 555 (2007) (holding that a plaintiff must provide "more than labels and conclusions, and a

16   formulaic recitation of the elements of a cause of action will not do").

17     Here, Amoma's Complaint fails that standard for two independent reasons. First, it does

18   not allege sufficient facts to meet the *Iqbal* plausibility standard for each element of Amoma's

19   claim that Expedia attempted to monopolize a relevant market in violation of Section 2 of the

20   Sherman Act or the CPA. Second, Amoma's claims are time-barred given that they were filed

21   more than four years after Amoma learned of trivago's changes to its advertising bidding system.

22

23

24

25   ---
[5] Tribunal Judiciaire de Strasbourg [TJ] [Judicial Court Commercial Chamber of Strasbourg], Strasbourg, June 20,
2022, RG n° 21/01686. A court may take judicial notice of foreign pleadings for which the authenticity or accuracy
26   are not in dispute. *Khoja*, 899 F.3d at 999 (affirming notice of foreign patent application date); *In re Ex Parte Application of Jommi*, 2013 WL 6058201, at *1 n.1 (N.D. Cal. Nov. 15, 2013) (taking judicial notice of "foreign court documents" from Switzerland).

**MORGAN LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL. (206) 407-2200 FAX. (206) 407-2224

### A.    Amoma Fails to Allege a Plausible Claim for Attempted Monopolization under the Sherman Act.

To state a claim for attempted monopolization, Amoma must allege facts that render plausible each of the elements of such a claim: that (1) Expedia engaged in predatory or exclusionary conduct; (2) Amoma suffered antitrust injury as a result of Expedia's conduct; (3) Expedia had a specific intent to monopolize the alleged relevant market; and (4) Expedia had a dangerous probability of achieving monopoly power in the alleged relevant market due to the challenged conduct. *See e.g., Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995). The Complaint fails to allege facts sufficient to support any of these four required elements.

#### 1.    Amoma Fails to Allege Exclusionary Conduct by Expedia.

To support the first element of an attempted monopolization claim sufficiently, the plaintiff must allege facts indicating that the defendant plausibly engaged in "predatory and exclusionary conduct." *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020); *see also Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008) (challenged conduct must either "not further competition on the merits or [do] so in an unnecessarily restrictive way"). The Complaint does not allege that Expedia engaged in any exclusionary conduct or that trivago excluded Amoma or anyone else from advertising on its site. Instead, Amoma purports to allege exclusionary conduct based on its own inability to adapt to trivago's modified bidding system, which cannot support its claim.

##### a)    *trivago Did Not Exclude Amoma from Its Advertising Services*

The Complaint's assertion that trivago excluded Amoma from its advertising services is unsupported by the factual allegations in the Complaint. Amoma expressly concedes that trivago provided Amoma and other advertisers with access to trivago's services, both before and after adding new bid modifier options. *Id.* ¶¶ 78−85, 89, 94, 97. Indeed, trivago worked with Amoma on the changes, and Amoma was able to "gain[] some share of the top offer position" as a result of trivago's assistance. *Id.* ¶ 98. This is the opposite of exclusion, and there is no basis for inferring that trivago (much less Expedia) excluded Amoma from advertising on trivago. *Walgreen Co. v.*

**MORGAN LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

1    *AstraZeneca Pharms. L.P.*, 534 F. Supp. 2d 146, 151 (D.D.C. 2008) (dismissing monopolization

2    claim for failure to allege exclusionary conduct where allegations included fact that defendant

3    "added choices" rather than eliminated any consumer choice).

4                    b)    *trivago's Addition of Bid Modifiers Was Not Exclusionary*

5           Amoma asserts that trivago nevertheless excluded Amoma from using its advertising

6    services through the changes to trivago's advertising bidding system. But a design change, such

7    as trivago's adoption of bid modifiers, that seeks to improve a product does not constitute an

8    exclusionary restraint prohibited by the Sherman Act. *See, e.g., Allied Orthopedic Appliances Inc.*

9    *v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010) ("As a general rule, courts are

10   properly very skeptical about claims that competition has been harmed by a dominant firm's

11   product design changes."). Courts avoid second-guessing unilateral product design choices (*e.g.*,

12   trivago's adoption of bid modifiers) even when such choices are made by companies with market

13   power (which is not the case here).[6] *See id.*; *California Computer Prod., Inc. v. Int'l Bus. Machines*

14   *Corp.*, 613 F.2d 727, 744 (9th Cir. 1979) ("*CalComp*"). Thus, in *CalComp*, the Ninth Circuit

15   rejected the plaintiff's claim that the defendant's interface changes placed the plaintiff at a

16   competitive disadvantage because the unilateral product improvement implemented by the

17   defendant was a cost-saving step, was consistent with industry trends, enabled defendant to reduce

18   prices, and improved performance. *CalComp*, 613 F.2d at 744.

19          Here, the Complaint acknowledges that trivago implemented bid modifiers in response to

20   dissatisfaction among its major advertising customers and that trivago explained that it was seeking

21   to attract more advertising business, Compl. ¶¶ 77, 80, which is a perfectly legitimate, non-

22   exclusionary business objective. trivago explained that adopting bid modifiers would

23   simultaneously "afford more granularity and flexibility when it comes to traffic acquisition and

24   optimize return on advertising" and "allow the booking platforms to increase or decrease their

25   cost-per-click bids depending on certain aspects of the customer's search." *Id.* ¶ 79. In turn,

26

---

[6] The Complaint does not contain any factual allegations about trivago's share of advertising services.

MOTION TO DISMISS - 8
(Case No. 2:23-cv-00983)

MORGAN LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

1    consumers would receive better results because hotel booking services targeted their advertised

2    offers to individual travelers' needs. *Id.* ¶¶ 79, 81.[7]

3           Accordingly, as in *CalComp* and *Allied Orthopedic*, trivago's efforts to improve its

4    advertising bidding system cannot—as a matter of law—support Amoma's assertion that trivago

5    engaged in improper exclusionary conduct. *See Allied Orthopedic Appliances*, 592 F.3d at 998–

6    99 ("[A] design change that improves a product by providing a new benefit to consumers does not

7    violate Section 2 absent some associated anticompetitive conduct").

8           More generally, Amoma's preference that trivago maintain its prior bidding system and

9    not seek to innovate does not turn trivago's actions into exclusionary conduct. In *Aerotec Int'l,*

10   *Inc. v. Honeywell Int'l, Inc.*, for example, the Ninth Circuit rejected the plaintiff's claim that

11   Honeywell withheld parts and technical data and enacted onerous payment terms and pricing

12   penalties, which the plaintiff alleged amounted to denial of access to an essential input and a refusal

13   to deal in violation of Section 2 of the Sherman Act. 836 F.3d 1171, 1184 (9th Cir. 2016). The

14   Ninth Circuit held that the plaintiff's displeasure with Honeywell's business terms did not

15   constitute a denial of reasonable access to the desired products. *Id* at 1183–86. Here too, the Court

16   should reject Amoma's attempt to "sidestep the reality" that it was never excluded from trivago.

17   *Id.* at 1183.

18          Further, allegations that Amoma was dissatisfied with the changes or unhappy with

19   trivago's implementation of them, Compl. ¶¶ 86–101, do not constitute a denial of access.

20   "[T]here is 'no duty to deal under the terms and conditions preferred by rivals.'" *Aerotec*, 836 F.3d

21   at 1184 (quoting *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 457 (2009)). Indeed,

22   even if trivago had terminated its relationship with Amoma, which it did not, "as a general matter,

23   the Sherman Act does not restrict the long recognized right of [a company] engaged in an entirely

24   private business, freely to exercise his own independent discretion as to parties with whom he will

25

26

---

[7] Amoma's assertion that the "real aim of this move was to eliminate Amoma from the market" is entirely conclusory and merits no weight whatsoever under *Twombly*. Compl. ¶ 77.

MOTION TO DISMISS - 9
(Case No. 2:23-cv-00983)

**MORGAN LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

deal." *Id.* (internal quotation marks omitted). Amoma's disagreement with how trivago operated its bidding system cannot support its Section 2 claim.

> c) *The Complaint Fails to Allege Facts Indicating That Expedia Excluded Amoma from Advertising on trivago.*

Amoma's claims against Expedia also fail on the separate grounds that it has not alleged facts plausibly indicating that Expedia actually exercised control over trivago with respect to the addition of bid modifiers in trivago's advertising bidding system. "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). A parent corporation is insulated from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary, where the parent does not directly control the subsidiary's actions or there is not an alter ego relationship. *See, e.g.*, *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 859 (9th Cir. 1986); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 418 (S.D.N.Y. 2011) (generic references to "defendants" was not sufficient to indicate direct involvement by parent companies).

The Complaint is devoid of allegations that trivago acted as the alter ego of Expedia or that either firm ignored the companies' corporate forms. Instead, Amoma relies solely upon allegations that Expedia holds a majority of shares in trivago to assert that Expedia *could* have controlled trivago's business strategy. Compl. ¶¶ 19, 33, 34. The allegation that Expedia *could* control trivago's business strategy is far too general and fails to allege facts plausibly indicating that Expedia *actually required* trivago to change its advertising bidding system. If anything, the allegations in the Complaint indicate that trivago changed its advertising bidding system in response to feedback from Booking, which is a competitor to Expedia.[8]

Regardless, Expedia did not have the right to control trivago's operations in 2019. trivago's

---

[8] *See, e.g.,* Compl. ¶ 75 ("Booking had not preferred Trivago's method of ranking offers on its site. Booking had reduced its activity (i.e. cut its advertising spending) on Trivago.").

MOTION TO DISMISS - 10
(Case No. 2:23-cv-00983)

MORGAN LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

1   annual reports and the attached Shareholders Agreement cited in the Complaint[9] state that trivago's

2   supervisory board "shall not issue instructions to the Managing Directors [of trivago]" except as

3   required by Dutch law or as set forth in the Shareholder Agreement.[10] The Complaint does not cite

4   any provision of Dutch law or the Shareholder Agreement that created any pertinent exception to

5   this prohibition.[11]   Thus, Amoma has failed to plead facts to make it plausible that Expedia

6   controlled trivago's challenged actions.

7                          2.        **Amoma Fails to Allege Antitrust Injury.**

8          The Complaint similarly fails to allege facts making it plausible that trivago's conduct was

9   anticompetitive and resulted in antitrust injury. Antitrust injury is "injury of the type the antitrust

10  laws were intended to prevent and that flows from that which makes defendants' acts unlawful."

11  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *Brantley v. NBC*

12  *Universal, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012). "Where the defendant's conduct harms the

13  plaintiff without adversely affecting competition generally, there is no antitrust injury." *Paladin*

14  *Assocs.*, 328 F.3d at 1158.

15         The Complaint lacks any factual allegations indicating that any hotel booking service other

16  than Amoma was unable to continue to compete in the marketplace because of trivago's actions

17  or that consumers could not access hotel rates offered by Amoma through other means. *See* Compl.

18  ¶ 108. Indeed, the Complaint is explicit that the allegations relate to an effort by Expedia to affect

19  only "*one* of its competitors in the hotel-booking market." *Id.* ¶ 4 (emphasis added).

20

21

22  [9] Compl. ¶ 34 (referencing data from 2017, 2018, and 2019 trivago annual reports); trivago 2019 Annual Report at 83; trivago, 2018 Annual Report (Form 20-F), at 86 (Mar. 6, 2019), https://www.sec.gov/Archives/edgar/data/1683825/000168382519000008/trvg201820-fusgaap.htm; trivago, 2017

23  Annual Report (Form 20-F), at 83–84 (Mar. 6, 2018), https://ir.trivago.com/static-files/9887d330-f666-4387-b4a9-cf3bf35865fb).

24  [10] trivago 2019 Annual Report, *supra* note 5, at Exhibit 2.1, Annex C, Art. 11, Appendix

25  A. Further, the Complaint alleges that only two of the seven members of the supervisory board were Expedia employees in 2019. Compl. ¶ 20.

26  [11] trivago 2019 Annual Report, *supra* note 5, at 78–79; *see also Khoja*, 899 F.3d at
    1003 ("[U]nlike judicial notice, a court 'may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'")

Further, the Complaint concedes that numerous other hotel-related advertising options remained available. *Id.* ¶¶ 35, 67 (citing other online hotel search sites offering advertising, including Kayak, TripAdvisor, Google Hotel Ads, and Hotelscombined). Amoma itself placed advertisements on many of these sites. *Id.* ¶ 67 ("Amoma listed offers on several hotel search engines, including [t]rivago, Google, TripAdvisor, Hotelscombined, and Kayak."). The availability of multiple other advertising options underscores the absence of harm to competition or antitrust injury. *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 403–04 (3d Cir. 2016) ("[I]f customers are free to switch to a different product in the marketplace but choose not to do so, competition has not been thwarted—even if a competitor remains unable to increase its market share.").

Under these circumstances, courts have regularly dismissed Section 2 claims by disgruntled competitors for failure to allege facts indicating antitrust injury or harm to competition as a whole. *See Brantley*, 675 F.3d at 1200 ("Plaintiffs may not substitute allegations of injury to the claimants for allegations of injury to competition."); *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1143 (9th Cir. 2022) (dismissing Section 2 claim against Google because "[w]hatever injuries [plaintiff] may have itself suffered, [plaintiff] is missing the necessary harm to competition in the relevant market"); *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1076−77 (11th Cir. 2004) (dismissing Section 2 claim where plaintiff urged court to "equate harm to it with harm to competition as a matter of law" but failed to allege "any harm to competition in the market, nor explained how any of the actions taken by [defendant] could lead to monopolization of that market"); *Perry v. Rado*, 504 F. Supp. 2d 1043, 1049 (E.D. Wash. 2007), *aff'd*, 343 F. App'x 240 (9th Cir. 2009) (dismissing complaint because it did not contain "enough factual matter  . . . which, taken as true, suggests there was any injury to competition beyond the impact" on doctor and his medical practice).

3.   **Amoma Fails to Allege Facts Indicating That Expedia Had a Specific Intent to Monopolize a Relevant Market Through the Challenged Conduct.**

Yet another independent reason why Amoma's Sherman Act claim should be dismissed is that the Complaint fails to allege facts plausibly indicating that Expedia had the requisite specific intent to monopolize the alleged relevant market for global online hotel bookings through the revisions to trivago's advertising bidding system. An attempted monopolization claim requires compelling evidence of a specific intent to use improper exclusionary means to harm the competitive process. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 736 (9th Cir. 1987) ("Termination of one distributor in order to establish  an exclusive distributorship, even with the knowledge that harm to competition will ensue, does not create an inference that harm to competition is intended").

Here, the Complaint is wholly devoid of *any* factual allegations indicating that Expedia had specific intent to use the changes in the trivago bidding system to monopolize the alleged market for global online hotel bookings. Indeed, the Complaint acknowledges trivago's procompetitive interests in improving its advertising bidding systems. For example, trivago explained that it changed its system to "strengthen" its "relationship with . . . major advertisers" and remain competitive with other hotel search services that its advertising customers preferred. *Id.* ¶¶ 77, 80.[12] Thus, Amoma's allegations are far more consistent with trivago's efforts to compete more effectively than with the assertion that they were intended to exclude Amoma. *See Twombly*, 550 U.S. at 557 (complaint needs "allegations plausibly suggesting (not merely consistent with)" unlawful conduct).[13]

---

[12] The assertions that trivago's "real aim" was to drive Amoma out of business (Compl. ¶ 77) are wholly conclusory. There are no facts alleged that support this assertion.

[13] A desire by Expedia to succeed in the marketplace is not sufficient to establish an intent to monopolize. "Direct evidence of intent to vanquish a rival in an honest competitive struggle cannot help to establish an antitrust violation . . . ." *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1028 (9th Cir. 1981). Rather, the plaintiff must show "that the defendant sought victory through unfair or predatory means." *Id.*; *see also Catlin v. Washington Energy Co.*, 791 F.2d 1343, 1348 (9th Cir. 1986); *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 926 (9th Cir. 1980).

Amoma's allegations regarding Expedia's intent are limited to bare conclusory assertions that are not sufficient to defeat a motion to dismiss. Accordingly, the Court should dismiss Amoma's Section 2 claim for this reason as well. *Id.* at 557 ("[A] conclusory allegation . . . does not supply facts adequate to show illegality.")

4.   **Amoma's Factual Allegations Fail to Make Plausible That Expedia Has a Dangerous Probability of Monopolizing the Alleged Market for Global Online Hotel Bookings.**

The Complaint further fails to allege facts making it plausible that Expedia has a dangerous probability of monopolizing the alleged market for global online hotel bookings. To support this required element, a plaintiff must allege facts indicating that the defendant has a dominant share of the relevant market and that there are sufficiently high barriers to entry to make monopolization plausible. *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 484 (9th Cir. 2021) (considering both market share and barriers to entry to determine whether there was a dangerous probability of monopolization); *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, 1461 (9th Cir. 1993) ("[D]emonstrating the dangerous probability of monopolization in an attempt case . . . requires inquiry into the relevant product and geographic market and the defendant's economic power in that market.").[14]   The Complaint fails to meet this standard.

The Complaint does not allege facts indicating that Expedia has a sufficiently high share of the alleged "global online hotel booking market," Compl. ¶ 120, to show a dangerous probability of Expedia monopolizing it. The Complaint is devoid of factual allegations about the total size of the alleged market, Expedia's share of the market, Amoma's share of the market in 2019, or any changes in Expedia's share because of trivago's modifications to its bidding system. Indeed, the Complaint does not even allege that Expedia is the largest provider of global online hotel booking

---

[14] The plaintiff must allege facts indicating that the defendant's share is dominant, not just significant. *See Int'l Distribution Centers, Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 792 (2d Cir. 1987) (no dangerous probability of monopolization because it was "unlikely that even with a fifty percent market share NRT could raise prices without losing business"); *United States v. Empire Gas Corp.*, 537 F.2d 296, 305–07 (8th Cir. 1976) (a 47–50% market share alone not sufficient to show dangerous probability of success for attempt to monopolize claim).

services.

Instead, Amoma attempts a sleight of hand to create a misimpression that Expedia might have a large share of the alleged relevant market.  Amoma alleges that Expedia accounted for "nearly half of the U.S. online hotel booking ecosystem in 2016 and 2017, and nearly two-thirds of the bookings on [online travel agencies] in the United States." *See id.* ¶ 54. These allegations relate only to *U.S.* hotel bookings—not global hotel bookings—and are from six or more years ago (and two or three years prior to the relevant alleged conduct). They do not meet Amoma's burden to allege facts making it plausible that Expedia had in 2019 (or has today) a sufficiently high share of the alleged *global* hotel booking market to indicate that Expedia has a dangerous probability of monopolizing it.

This failure is fatal to Amoma's claim. *See Rebel Oil*, 51 F.3d at 1434 (plaintiffs must allege defendant owns a dominant share of the alleged relevant market); *Rutman*, 829 F.2d at 736 (plaintiff's "section 2 claim cannot lie because it lack[ed] an allegation that Gallo possesses monopoly power in the relevant geographical market" and plaintiff's allegations about national market share were insufficient to state market share in the relevant county); *Ceiling & Interior Sys. Supply, Inc. v. USG Interiors, Inc.*, 878 F. Supp. 1389, 1394 (W.D. Wash. 1993) (dismissing in part for failure to offer clear figures to demonstrate market shares in a particular geographic market it accused defendant of attempting to monopolize).[15]

Further, the allegations of shares in the Complaint are limited to hotel bookings by "online travel agencies." *See* Compl. ¶ 54. The relevant market must include all products that are reasonably interchangeable from the customers' perspective. *See, e.g.*, *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018); *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1045 n.4 (9th Cir. 2008). The Complaint is devoid of allegations indicating that consumers view booking hotels through other means (such as hotel websites) as not reasonably interchangeable with

---

[15] *See also Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 330 (D.N.J. 1999) (dismissing complaint, including Section 2 claims, because "vague allegation of 'control'" did not "render the conclusory recitation of market dominance" sufficient under Rule 12); *Zunum Aero, Inc. v. Boeing Co.*, 2022 WL 2116678, at *8 (W.D. Wash. June 13, 2022) (dismissing claim for failure to allege facts supporting the alleged geographic market).

MOTION TO DISMISS - 15
(Case No. 2:23-cv-00983)

**MORGAN LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL. (206) 407-2200 FAX, (206) 407-2224

booking through online travel agencies. To the contrary, the Complaint acknowledges that consumers can and do book hotel rooms online through other means, including, for example, directly with hotels. *Id.* ¶ 27 ("30% of [online hotel bookings] were made directly through the hotels"). Thus, the Complaint provides no basis for excluding hotel websites and other hotel booking services from the alleged relevant market. *See Newcal*, 513 F.3d at 1045 (finding that a complaint with facially unsustainable definition of the relevant market may be dismissed under Rule 12(b)(6)).[16]

### B. Amoma's Washington Consumer Protection Act Claim Should Be Dismissed for the Same Reasons as Its Claim under Section 2 of the Sherman Act

The Complaint alleges that Expedia, through trivago, violated the CPA based on the same factual allegations that Amoma raises in support of its attempted monopolization claim under the Sherman Act. Courts construe the CPA in accord with "final decisions of the federal courts . . . interpreting the various federal statutes dealing with the same or similar matters.'" *Omega Env't, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1165 n.8 (9th Cir. 1997) (quoting RCW 19.86.920). By corollary, allegations that do not state an attempted monopolization claim under the Sherman Act do not violate the CPA.[17]

### C. Amoma's Claims Are Time-Barred

A private claim brought under either the Sherman Act or the CPA is subject to a four-year statute of limitations that begins to run when the cause of action accrues. 15 U.S.C. § 15b; RCW 19.86.120. A cause of action accrues when "a defendant commits an act that injures" a plaintiff.

---

[16] Even if Amoma had adequately alleged a plausible product market—which it has not—Amoma's claim would also fail because Amoma has not alleged facts indicating barriers to entry. To the contrary, Amoma alleges that it "rapidly established itself as a key player in online hotel reservations, generating over €2.5 billion in sales between 2014 and 2019," and it could undercut Expedia's and hotels prices even where price parity was allegedly required. Compl. ¶¶ 32, 58−59, 64−65. Amoma's own success belies any claim that that there are substantial barriers to entry.

[17] Amoma has not even attempted to plead facts sufficient to support the elements of a CPA claim in any event:  (1) an unfair or deceptive act or practice, (2) that occurred in the course of trade or commerce, (3) impacted the public interest, (4) injured the plaintiff's business or property, and (5) was caused by the defendant. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533−34, 539 (Wash. 1986) ("[P]rivate CPA plaintiffs must establish *all* five elements.") (emphasis added).

MORGAN LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

1   *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971). Amoma was aware of

2   the single act it now challenges—trivago's introduction of bid modifiers—when, "[i]n April 2019,

3   Trivago reached out to Amoma to inform it that it was likely to fade out its prior model for ranking

4   offers on its site." Compl. ¶ 77. In May 2019, trivago provided Amoma with detailed information

5   about the new "bid modifiers" and indicated that the changes were in part a response to feedback

6   from its "major advertisers", which Amoma understood to include Booking and Expedia. *Id.* ¶¶

7   78−81. Amoma further learned in June 2019 that trivago had begun implementing the revised

8   advertising bidding system. *Id.* ¶ 85. Accordingly, Amoma had ample notice of the alleged conduct

9   by trivago and Expedia that it challenges in this Complaint more than four years before Amoma

10  filed this action on June 30, 2023.

11      Amoma's conclusory assertions that Expedia fraudulently concealed its actions and that

12  Amoma could not discover its claims until September 2019 lack merit. *Id.* ¶ 116. A plaintiff

13  "carries the burden of pleading and proving fraudulent concealment" and "must plead facts

14  showing that [the defendant] affirmatively misled it, and that [the plaintiff] had neither actual nor

15  constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover

16  those facts." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012). The

17  Complaint fails to allege facts indicating any such concealment by Expedia. To the contrary, the

18  Complaint concedes that Amoma "contacted trivago on June 6, 2019, to alert it of communication

19  and performance concerns." Compl. ¶ 86. Where, as here, "the plaintiff had actual or constructive

20  knowledge of the facts giving rise to the claim, the doctrine of fraudulent concealment does not

21  apply." *Hexcel*, 681 F.3d at 1060. Accordingly, the Complaint should be dismissed as time barred.

22  **IV.   CONCLUSION**

23      For the foregoing reasons, the Complaint should be dismissed with prejudice.

24

25

26

**MORGAN LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

1

Date: August 30, 2023

**MORGAN, LEWIS & BOCKIUS LLP**

By */s/ Angelo J. Calfo*

    Angelo J. Calfo, WSBA No. 27079
    Gabriel Reilly-Bates, WSBA No. 52257
    1301 Second Avenue, Suite 2800
    Seattle, WA 98101
    (206) 274-6400 | Phone
    E-mails: angelo.calfo@morganlewis.com;
            gabriel.reillybates@morganlewis.com


**COVINGTON & BURLING LLP**


By */s/ Thomas O. Barnett*

    Thomas O. Barnett, #426840 (*pro hac vice application pending*)
    Jeffeline Ermilus, #1613702 (*pro hac vice application pending*)
    One CityCenter
    850 Tenth Street NW
    Washington, D.C. 20001
    (202) 662-5407 | Phone
    Emails: tbarnett@cov.com
           jermilus@cov.com

    *Counsel for Defendant, Expedia, Inc.*

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**MORGAN LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224