The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

The OFFICE CANTONAL DES FAILLITES DE LA RÉPUBLIQUE ET DU CANTON DE GENÈVE, acting in its capacity as representative in the bankruptcy of AMOMA SARL, a Swiss limited liability company,

                        Plaintiff,

    v.

EXPEDIA, INC.,

                        Defendant.

Civil Action No. 2:23-cv-00983-BJR

**PLAINTIFF AMOMA SARL'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(b)(6)**

**ORAL ARGUMENT REQUESTED**

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................ 1

II.     FACTS ....................................................................................................................... 1

III.    LEGAL STANDARD ................................................................................................ 3

IV.     ARGUMENT ............................................................................................................. 3

        A.      Amoma's Sherman Act Claim for Attempted Monopolization Is
                Well Pled. ...................................................................................................... 3

                1.      Amoma Adequately Alleges Predatory or Anticompetitive
                        Conduct. ............................................................................................ 4

                        a.      Excluding Amoma. ................................................................ 4

                        b.      Expedia's control. ................................................................. 7

                2.      The Complaint Establishes an Antitrust Injury. ................................ 9

                3.      Expedia Specifically Intended to Destroy Its Competition. ............ 11

                4.      Expedia's Conduct Had a Dangerous Probability of
                        Monopolizing. .................................................................................. 12

                        a.      Amoma adequately alleges the relevant market. ....................... 13

                        b.      Expedia dominates the relevant market. ................................. 14

                        c.      Amoma adequately alleges high barriers to entry. ................... 16

        B.      Amoma' Washington CPA Claim Is Well Pled and Is Not
                Duplicative of Its Sherman Act Claim. ........................................................ 17

        C.      Plaintiff's Claims Are Not Time-Barred. ..................................................... 19

V.      CONCLUSION ....................................................................................................... 20

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## I.   INTRODUCTION

The details of the online hotel booking systems and bid modifiers at issue in this litigation are complicated, but Plaintiff Amoma's Sherman Act and Washington Consumer Protection Act ("CPA") claims are not. Defendant Expedia used its subsidiary to force a major rival out of the online-hotel-booking market. The conduct did not benefit the subsidiary, and it did not benefit consumers. Instead, it allowed Expedia, already a dominant player in the market, to participate in the market without a major competitor who regularly undercut its prices. Expedia executed its strategy to destroy Amoma through unfair and deceptive means, including by implementing the bid modifiers in a manner that made it impossible for Amoma to effectively use them, by misleading Amoma as to the operation and purpose of the bid modifiers and concealing from Amoma their true functionality, and by failing to supply Amoma with accurate information regarding the functioning of the bid modifiers. The Motion to Dismiss ignores, or inaccurately labels as "conclusory," many of the allegations that support Amoma's claims. The Complaint's allegations sufficiently state plausible and timely filed claims for attempted monopolization and violation of the Washington CPA, and the Court should deny Expedia's motion.

## II.   FACTS

Defendant Expedia, Inc. moves to dismiss the Complaint of Plaintiff the Office Cantonal des Faillites de la République et du Canton de Genève, acting in its capacity as representative in the Bankruptcy of AMOMA SARL ("Amoma"). Expedia's Mot. to Dismiss the Compl. Pursuant to FRCP 12(b)(6) ("Mot."), Dkt. # 18. Although Expedia purports to accept Amoma's allegations as true for the purposes of its Motion, Mot. at 3 n.2, in fact it misrepresents those allegations in four major respects.

*First*, Expedia asserts that the Complaint alleges that Booking.com ("Booking") recommended that Trivago update its advertising bidding system by adding targeted bidding options. *See* Mot. at 1-2, 4. But that is not the case. Instead, the Complaint merely observes that

Booking had not preferred Trivago's method of ranking offers on its site and had reduced its activity there. Compl. ¶ 75, Dkt. # 1. Nothing in the Complaint suggests that Trivago made the changes in response to the demands of any customer other than its corporate parent, Expedia. No legitimate business reason justified the changes: only Expedia benefited from the bid modification system. *See id.* ¶ 108.

**Second**, Trivago did not *merely* "modify its advertising [bidding] system." *See* Mot. at 2 *contra*. There is no such allegation in the Complaint. Instead, Trivago developed an entirely new system for advertisers to promote their hotel rates on its platform. Nor did Amoma allege that the bid modifiers meant that "consumers would receive better results because hotel booking services targeted their advertised offers to individual travelers' needs." *Cf.* Mot. at 1, 4, 8-9. It alleged the opposite: that consumers were harmed because the new system highlighted offers that were most advantageous for Trivago, not the lowest prices for consumers. Compl. ¶ 110. Amoma also did not allege that other advertisers successfully adjusted to the new bid-modifiers. *Cf.* Mot. at 5. Trivago paused further changes to bid modifiers because its advertisers were having trouble adjusting. Compl. ¶ 108. The self-serving bid-modification marketing materials that the Motion quotes do not establish otherwise, and they are not evidence of the actual effect of bid modifiers on the market.

**Third**, Expedia leaves out crucial allegations related to Amoma's decline. Although Trivago's belated attempt to "help" Amoma increased Amoma's share of top-offer positions, it did so at an unsustainable cost. *Id.* ¶ 101. Expedia points out that "Amoma does not allege that Expedia or trivago[1] prevented Amoma from advertising" on other platforms, Mot. at 5, but neglects to mention that the Complaint does allege that Expedia's anticompetitive conduct drove Amoma entirely out of business. *See* Compl. ¶ 104. Over the years, Amoma had become dependent on its bookings through Trivago. *Id.* ¶ 105. When it rapidly lost those customers, it could not survive. *Id.* When Expedia forced Amoma from the market, it eliminated one of the

---

[1] Expedia's Motion maintains the lowercase stylization of its subsidiary; for readability, this Opposition uses the capitalized form except where quoting the Motion.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

few competitors able to undercut Expedia's parity rates. *Id.* ¶ 110.

**Fourth**, Amoma did not file the Complaint "more than four years after trivago announced **and launched** its modified bidding system." Mot. at 1 (emphasis added). The bid modifiers launched for Amoma no earlier than July 1, 2019, Compl. ¶ 85; Amoma's Complaint was filed less than four years thereafter, on June 30, 2023.[2]

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570.

### IV. ARGUMENT

**A.    Amoma's Sherman Act Claim for Attempted Monopolization Is Well Pled.**

Section 2 of the Sherman Act makes it illegal to "attempt to monopolize . . . any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2. To prove attempted monopolization, a plaintiff must demonstrate "(1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving 'monopoly power'; and (4) causal antitrust injury." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1432-33 (9th Cir. 1995). The Motion

---

[2] In addition, while Expedia suggests that Amoma commenced proceedings in France against Trivago in June 2022, Mot. at 6, in fact Amoma's founders reserved Amoma's right to act against Trivago much earlier, in related litigation in France in December, 2019, pending the determination of liquidation liabilities in the insolvency proceedings in Switzerland. *See* Tribunal Judiciaire de Strasbourg [Judicial Court Commercial Chamber of Strasbourg RG 19/01777, Assignation En Intervention Forcée [Summons] to Trivago N.V.

takes these elements out of order; for convenience, this Opposition follows its lead.

1.  **Amoma Adequately Alleges Predatory or Anticompetitive Conduct.**

    a.  **Excluding Amoma.**

"Anticompetitive conduct is behavior that tends to impair the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way." *See Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008). "[I]t is relevant to consider its impact on consumers and whether it has impaired competition in an unnecessarily restrictive way." *Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1036 (C.D. Cal. 2007) (citation omitted). "If a firm has been 'attempting to exclude rivals on some basis other than efficiency,' it is fair to characterize its behavior as predatory." *Id.* (citation omitted). Exclusionary conduct is conduct that "(1) tends to impair the opportunities of rivals, but also (2) either does not further competition on the merits or does so in an unnecessarily restrictive way." *Catch Curve*, 519 F. Supp. 2d at 1036; *see Cascade Health*, 515 F.3d at 894 (similarly defining "anticompetitive conduct"). Contrary to what the Motion implies, however, "changes in product design are not immune from antitrust scrutiny and in certain cases may constitute an unlawful means of maintaining a monopoly under Section 2" where, as here, the change has no procompetitive justification. *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010).

Expedia's conduct was an attempt to exclude Amoma for reasons other than efficiency, and it impaired Amoma's opportunities and did not further competition. Contrary to Expedia's arguments, its conduct was much more than a "design change" or attempt to "innovate." Amoma had survived on Expedia's subsidiary's platform through years of prior design changes and innovation. Compl. ¶¶ 64-73, 104. Indeed, with prior interface changes, Expedia induced Amoma to alter its own systems in order to adapt and compete on the Trivago platform. *Id.* ¶ 104. Unlike the changes at issue in *California Computer Products, Inc. v. International Business Machines Corp.* (*CalComp*), 613 F.2d 727 (9th Cir. 1979) and *Allied Orthopedic Appliances*, on

which Expedia relies, Mot. at 8-9, the bid modifiers were not a product enhancement or cost saving—Trivago lost money on them and they did not benefit any Trivago customer other than its parent, Expedia. Compl. ¶¶ 108-09. And unlike in *CalComp*, there is no allegation that Expedia's conduct was "consistent with industry trends," enabled Trivago to reduce prices, or improved performance. *See* Mot. at 22; *CalComp*, 613 F.2d at 744. Instead, the Complaint alleges that consumers were harmed by the bid-modification system. Compl. ¶ 110.

Likewise, this is not a case where the defendant merely "added choices," as in *Walgreen Co. v. AstraZeneca Pharmaceuticals L.P.*, 534 F. Supp. 2d 146, 151 (D.D.C. 2008), which Expedia also cites. Mot. at 7-8. Amoma was not given the option to avoid bid modifiers. Expedia contends that Amoma was "never excluded" from Trivago, *id.* at 9, but the bid modifiers, and the manner of their implementation, made it impossible for Amoma and others to effectively advertise on the platform. Compl. ¶ 108. Nor is Expedia's citation to *Aerotec International, Inc. v. Honeywell International, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016), Mot. at 9, persuasive. The anticompetitive conduct alleged here—the adoption of bid modifiers and the implementation thereof in an inscrutable and deceitful manner for no legitimate business purpose but instead to eliminate a leading low-price competitor from the market—goes far beyond the alleged changes in "business pattern" (i.e., the withholding of parts and technical data, and the imposition of onerous payment terms, and pricing penalties) that the Ninth Circuit found insufficient in *Aerotec*. *Id.* at 1183-84.

Contrary to Expedia's suggestions at Motion 8-9, the Complaint does not allege that Trivago's statements in marketing materials were accurate or made in good faith. On the contrary, the Complaint alleges that the marketing materials were a pretext to cover Expedia's anticompetitive scheme. *See* Compl. ¶¶ 77-80. Marketing materials are not evidence of the true motivation behind Expedia's conduct; given the bid modifiers' ultimate effect on the market, Expedia cannot stand behind its own marketing to suggest that its motives were pure. The bid-modification system made it effectively impossible for online booking companies with Amoma's

PL. AMOMA'S OPP'N TO DEF. EXPEDIA INC.'S MOT. TO DISMISS THE COMPL. PURSUANT TO FRCP 12(b)(6) - 5 (2:23-cv-00983-BJR)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

non-parity model to compete. Further, the Complaint mentions Bookings' dissatisfaction only in support of the point that online hotel travel agencies that advertised parity rates were dissatisfied with Trivago's platform, which (at the time) allowed customers to find lower rates from providers such as Amoma. Amoma does not allege that Trivago actually made the changes to appease Bookings except insofar as the elimination of Amoma would be attractive to Booking. *See id.* ¶¶ 75, 77. Similarly, Trivago's purported last-minute attempts to "help" Amoma only accelerated Amoma's decline. *Id.* ¶¶ 100-01. Moreover, "the existence of valid business reasons in antitrust cases is generally a question of fact not appropriate for resolution at the motion to dismiss stage." *Tucker v. Apple Computer, Inc.*, 493 F. Supp. 2d 1090, 1101 (N.D. Cal. 2006) (citing *SmileCare Dental Grp. v. Delta Dental Plan,* 88 F.3d 780, 786 (9th Cir. 1996)).

In addition, Expedia's conduct constitutes an anticompetitive refusal to deal under *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985). "As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel. Co. v. LinkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009). But there are "limited circumstances in which a firm's unilateral refusal to deal with its rivals can give rise to antitrust liability." *Id.* (citing *Aspen Skiing*, 472 U.S. at 608-11). Under *Aspen Skiing*, a defendant's refusal to deal may be anticompetitive where the parties had previously been engaged in a voluntary, cooperative, and profitable venture that the defendant terminated and where the defendant's decision to do so cannot be explained by anything other than a desire to harm competitors. *See Aspen Skiing*, 472 U.S. at 608-611; *see also Verizon Commc'ns Inc. v. Law Offs. of Curtis v. Trinko, LLP*, 540 U.S. 398, 408-09 (2004) (discussing *Aspen Skiing*).

Expedia's conduct runs afoul of *Aspen Skiing* and later cases applying its teaching. *See MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1132 (9th Cir. 2004) (noting that under *Aspen Skiing* an offer to deal with a competitor only on unreasonable terms "can amount to a practical refusal to deal"). Although Expedia, through Trivago, did not refuse outright to deal

PL. AMOMA'S OPP'N TO DEF. EXPEDIA INC.'S MOT. TO
DISMISS THE COMPL. PURSUANT TO FRCP 12(b)(6) - 6
(2:23-cv-00983-BJR)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

with Amoma, courts recognize that "*Aspen Skiing* [can] apply in cases involving a practical refusal to deal, in which a defendant offered its competitors only on unreasonable terms and conditions." *Safeway Inc. v. Abbott Labs*, 761 F. Supp. 2d 874, 894 (N.D. Cal. 2011). As in *Aspen Skiing,* the parties in this litigation had a long-standing business relationship (one that benefited both parties, Compl. ¶ 70) that the defendant abruptly terminated without any real pro-competitive explanation. Trivago did not offer Amoma any other option but to accept the bid modification system, and Trivago implemented bid modifiers in a way that made it impossible for Amoma to adapt in time. Like the defendant ski resort in *Aspen Skiing*, Trivago was willing to forsake short term profits to achieve an anticompetitive end. In *MetroNet*, the Ninth Circuit emphasized the significance of the forsaking of profits in a refusal to deal case. 383 F.3d at 1134; *see also Safeway Inc.*, 761 F. Supp. 2d at 894-95 (discussing *MetroNet*). Like the plaintiff in *Aspen Skiing*, Amoma saw its business plummet after its rival Expedia caused Trivago to modify its platform in a manner that shut Amoma out of what had been a long-standing and mutually beneficial business relationship.

### b. Expedia's control.

The Complaint plausibly alleges that the exclusionary conduct occurred at Expedia's direction. Compl. ¶¶ 5, 19. The Complaint alleges that Trivago has been majority-owned by Expedia since 2013,[3] *id.* ¶ 19, and further alleges that Expedia controlled Trivago's business strategy through the appointment of a majority of the members of Trivago's Supervisory Board (in 2019, Expedia's appointees to the Supervisory Board included Expedia's CEO and Chief Legal Officer).[4] *Id.* ¶¶ 20-21. At footnote 4 of its Motion, Expedia purports to cite Trivago's 2019 Annual Report,[5] which at pages 80-83 confirms that (i) the Supervisory Board consisted of

---

[3] Trivago's post-IPO statements acknowledge that Expedia's "voting control will limit the ability of other shareholders to influence corporate matters and, as a result, [Trivago] may take actions that shareholders other than Expedia do not view as beneficial. . . . Expedia's interests may conflict with our interests . . . and conflicts of interest between Expedia, the Founders and us could be resolved in a manner unfavorable to us and our shareholders." Compl. ¶ 33 (alteration in original).

[4] Expedia incorrectly asserts that the Complaint alleges that only two of the seven Supervisory Board members were appointed by Expedia. Mot. at 11 n.10. The Complaint notes that two members of Expedia's leadership were on the Supervisory Board, Compl. ¶ 20, but it does not allege that these were the only Expedia appointees.

[5] Expedia actually cites Trivago's 2018 Annual Report. Trivago's 2019 Annual Report can be found at https://www.sec.gov/ix?doc=/Archives/edgar/data/1683825/000168382520000008/trvg-20191231.htm.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

seven members, four of whom were appointed by Expedia; (ii) the Supervisory Board supervised and advised Trivago's Management Board (whose members were nominated by the Supervisory Board, and elected by the shareholders—with Expedia holding a majority of the shares), and appointed Trivago's CEO and CFO; and (iii) the Management Board was obligated "to keep our supervisory board informed, and to consult with our supervisory board, on important matters."

Expedia attempts to disclaim its control of Trivago by quoting language it attributes to Trivago's annual reports, but which is actually found in an Appendix to Trivago's December 15, 2016 Amended and Restated Shareholders Agreement.[6] That language provides that the Supervisory Board cannot issue instructions to the Managing Directors "except as otherwise set forth in these rules or as required by Dutch law." Mot. at 11. As a threshold matter, Expedia's quotation of this provision is an improper use of the document at the motion to dismiss stage, because it is "nothing more than another way of disputing the factual allegations in the [C]omplaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018). In any event, the language does not rebut the allegations of Expedia's control over Trivago. First, the immediately preceding sentence in the Shareholders Agreement confirms the Supervisory Board's control by requiring that the Managing Directors act "in a manner materially consistent with the Annual Business Plan approved by the Supervisory Board." Mot. at 11 n.10. Moreover, Appendix D to the Shareholders Agreement provides that the Supervisory Board "is charged with the supervision of the policy of the Management Board and the general course of affairs of the Company and of the business connected with it. . . .The Supervisory Board shall provide the Management Board with advice."[7] It is clearly plausible that Expedia controlled Trivago through not only majority stock ownership, but also through its appointment of a majority of the Supervisory Board, which (i) supervised, nominated the members of, and advised the Management Board (which members were elected by the shareholders, of whom Expedia constituted a majority), (ii) appointed the CEO and CFO; and (ii) established the Annual

---

[6] Amended and Restated Shareholders Agreement Concerning Trivago N.V. Dated as of December 15, 2016, https://www.sec.gov/Archives/edgar/data/1683825/000168382518000019/ex41amendedandrestatedshar.htm.
[7] *Id.* § 4.1.

PL. AMOMA'S OPP'N TO DEF. EXPEDIA INC.'S MOT. TO
DISMISS THE COMPL. PURSUANT TO FRCP 12(b)(6) - 8
(2:23-cv-00983-BJR)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Business Plan, which was binding on the Management Board.

Circumstantial evidence also suggests that Trivago implemented bid modifiers at Expedia's direction. For one thing, Expedia, and not Trivago, benefited from the new system. Compl. ¶ 109. For another, bid modifiers were created following Trivago's summit with its parent company, Expedia. *Id.* ¶ 8. Especially at the advent of its new agreement with Marriott, ¶ 112, Expedia had every reason to want a non-parity-rate provider out of the way. In sum, the allegations of corporate governance and this circumstantial evidence make it more than plausible that Expedia exercised its control over Trivago to oust Amoma via its adoption and implementation of the bid modifiers.[8]

### 2. The Complaint Establishes an Antitrust Injury.

To establish antitrust injury, a plaintiff must allege "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (citation omitted).

As to the first requirement, Amoma has alleged the unlawful conduct in detail. *See supra* Section IV.A.1. As to the second requirement, that conduct injured Amoma because it caused Amoma to go out of business. Compl. ¶¶ 104-08. Trivago had come to account for over half of Amoma's sale of hotel rooms. *Id.* ¶ 69. Amoma became dependent on Trivago's listings because of Trivago's advertising power and resulting consumer awareness. *Id.* Over time, Amoma made certain changes to its business model and strategic operations to make its offers more appealing on the Trivago platform. *Id.* Trivago had insight into Amoma's dependence through its

---

[8] The allegations of Expedia's control over Trivago go far beyond the circumstances of the companies in the cases Expedia relies on. *Kilkenny* affirmed summary judgment that a parent corporation did not operate a ship owned by a subsidiary, and was not the subsidiary's alter ego, where the plaintiff's only evidence was certain third-party reports, statements by two members of the ship's crew, payment of certain subsidiary expenses by the parent, and the fact that the ship transported products for the parent. 800 F.2d at 859. In *Digital Music*, the court applied New York law to reject a claim of piercing the corporate veil where the allegations were only that certain parent corporations owned their subsidiaries and had ownership interests in related joint ventures. 812 F. Supp. 2d at 418. Here, Amoma alleges not only that Expedia owned Trivago, but also that Expedia exercised its control through its control of Trivago's Supervisory Board, which allegations are reinforced by the acknowledgement of Expedia's potential to control Trivago in securities filings, and the circumstantial evidence that the adoption and implementation of bid modifiers that benefitted only Expedia, not Trivago.

PL. AMOMA'S OPP'N TO DEF. EXPEDIA INC.'S MOT. TO
DISMISS THE COMPL. PURSUANT TO FRCP 12(b)(6) - 9
(2:23-cv-00983-BJR)

partnerships with Amoma over the years. *Id.* ¶¶ 72-73. Amoma was the third largest advertiser on the platform. *Id.* ¶ 74. When bid modifiers tanked Amoma's bookings through Trivago, the entire business went down. *Id.* ¶¶ 104-05 ("Amoma could not rapidly shift all of its Trivago business to another hotel search engine in time to save its business; because Amoma was so invested in the Trivago platform, it could not count on the sales from the other hotel search engines to keep it alive.").

The third element is also satisfied: Expedia's conduct was unlawful precisely because it succeeded in excluding its rival from the online-travel-agency market. Expedia cites no case to support the proposition that anticompetitive behavior must harm more than one rival. In any event, Trivago itself recognized that many of its advertisers struggled to adapt to the new system. *Id.* ¶ 108.

Finally, the fourth element is satisfied because the alleged conduct is the exactly the type that antitrust laws were intended to prevent. Bid modifiers drove Amoma, the "Enemy #1 for out-of-parity-prices," from the market, thereby significantly injuring competition and benefitting Expedia. *Id.* ¶¶ 66, 110. Amoma's exit made it significantly more difficult for consumers to access the lower, non-parity hotel rates in the online travel agency market. *Id.* Bid modifiers also further obscure the lowest prices, as Trivago now offers primary placement in its search results to the highest bidder, not to the lowest price. *Id.* ¶ 80. Expedia's reliance on *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394 (3rd Cir. 2016), on this point is misplaced. Mot. at 12. In *Eisai* the court noted that the "concern is . . . about which products are reasonably available" to consumers. *Id.* at 403. Because of Amoma's key position as the low-price, non-parity provider, by forcing it out of the market, Expedia made it far more difficult for consumers to access low price alternatives.

Expedia cites a series of cases that stand for the non-controversial propositions that a plaintiff must allege injury to competition, and that the injury must be of the type that the

PL. AMOMA'S OPP'N TO DEF. EXPEDIA INC.'S MOT. TO DISMISS THE COMPL. PURSUANT TO FRCP 12(b)(6) - 10 (2:23-cv-00983-BJR)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

antitrust laws are intended to prevent.[9] As discussed above, both elements are adequately pled in the Complaint. The Ninth Circuit's decision in *Pinhas v. Summit Health, Ltd.*, 894 F.2d 1024 (9th Cir. 1989), is particularly instructive. A physician who had been denied hospital privileges claimed injury to competition because he performed services at lower fees to patients. The court reversed the dismissal of this claim, stating:

> Assuming Pinhas's allegation that he provides his services at a rate cheaper than that of his competitors to be true, the preclusion of Pinhas from practicing could conceivably injure competition by allowing other similar doctors to charge higher prices for their services. Or Pinhas may show that his preclusion otherwise substantially reduced total competition in the market. We therefore conclude that Pinhas has adequately pleaded injury to competition.

894 F. 2d at 1032. As the "arch-undercutter," Compl. ¶ 66, Amoma played a key role in the marketplace and Expedia's successful effort to destroy Amoma injured competition.

### 3. Expedia Specifically Intended to Destroy Its Competition.

In attempted monopolization cases, the defendant firm "has not yet achieved a position of power in the market but is trying to build up such a position. Being without power to exploit or exclude, such a firm must be shown to have a specific intent to achieve these results." *Cascade Health*, 515 F.3d at 893 & n.3 (9th Cir. 2008) (quoting A.D. Neale & D.G. Goyder, *The Antitrust Laws of the United States of America* 93 (3d ed. 1980)).

Specific intent may be established by direct or circumstantial evidence. *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1027 (9th Cir. 1981). Accordingly, specific intent to destroy competition "may be inferred from well-pleaded allegations of predatory or anti-competitive conduct." *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 200 F. Supp. 3d 1012, 1023 (N.D. Cal. 2016). "At the pleading stage, facts to support allegations about . . . intent are likely in the possession of [the other party] and may be discovered . . . at a later stage in the litigation." *Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1035 (C.D.

---

[9] Mot. at 11-12 (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1143 (9th Cir. 2022); *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012); *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1076-77 (11th Cir. 2004); *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003); *Perry v. Rado*, 504 F. Supp. 2d 1043, 1049 (E.D. Wash 2007)).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Cal. 2007).[10]

Amoma has pled Expedia's specific intent to monopolize the global hotel booking market. In addition, Amoma has pled substantial circumstantial evidence to suggest that Expedia specifically intended to destroy price competition in the online travel agency market. The allegations include the fact of Trivago's early launch of the bid-modifiers for Expedia and other parity agencies, Compl. ¶ 85; the fact that Trivago did not make money from the bid-modification system, *id.* ¶ 109; and the fact that consumers of Trivago were harmed because, after the change, the rates advertised in the "top position" had even less to do with the attractiveness of the deal, *id.* ¶ 110. Allegations of shifting launch dates, *id.* ¶ 82, haphazard implementation, *id.* ¶ 91, failure to provide necessary analytics, *id.* ¶¶ 87, 90, and inaccurate reporting, *id.* ¶ 101, all further support the inference that Expedia was acting with an anti-competitive motive, especially considering the "early access" that Trivago had given its parent company, Amoma's competitor. These are well pled factual allegations, not "bare conclusory assertions," Mot. at 14, as Expedia claims.

### 4.    Expedia's Conduct Had a Dangerous Probability of Monopolizing.

Expedia attempts to establish a pleading standard for dangerous probability of monopolizing through citations to cases that evaluate whether an antitrust claimant carried its evidentiary burden at trial.[11] But these cases do not address pleading requirements, and therefore do not support Expedia's position.

---

[10] *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987), *Catlin v. Washington Energy Co.*, 791 F.2d 1343 (9th Cir. 1986), and *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919 (9th Cir. 1980), which Defendants cite, Mot. at p. 13 & n.13, are not to the contrary. *Rutman*'s holds that the termination of a distributor in order to establish an exclusive distributorship is not, without more, an antitrust violation. *Id.* at 735-36. Contrary to Expedia's assertion, *Rutman* does not require "compelling evidence" of a specific intention to harm competition, rather it requires allegations that "at least outline or adumbrate" a Sherman Act violation." *Id.* at 736 (citation omitted). The allegations in the Complaint described above clearly satisfy this standard. In *Catlin*, the plaintiff failed ***at trial*** to provide evidence of specific intent to monopolize or of unfair or predatory conduct. 791 F.2d at 1348. Both are adequately alleged in the Complaint. *Hunt-Wesson* notes that specific intent will "normally be proved by inference from conduct," 627 F.2d at 926, and uphold a complaint that alleged specific intent to restrain competition based on allegations of anticompetitive conduct that harmed not competition but competitors. *Id.* Here, the Complaint alleges harm not only to Amoma, but to competition in the marketplace. Compl. ¶¶ 104-06, 110.

[11] Mot at 14 & n.14 (citing *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466 (9th Cir. 2021); *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455 (9th Cir. 1993); *Int'l Distrib. Ctrs, Inc. v. Walsh Trucking Co.*, 812 F.2d 786 (2nd Cir. 1987); *United States v. Empire Gas Corp.*, 537 F.2d 296 (8th Cir. 1976).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Amoma has adequately pled the matters relevant to dangerous probability of monopolization: market definition, market dominance, and barriers to entry. *Rebel Oil*, 51 F.3d at 1434. Expedia's insistence that the Complaint is deficient with respect to market definition and market dominance[12] ignore the Ninth Circuit's clear statement in *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008) that, "[t]here is no requirement that these elements of the antitrust claim be pled with specificity." *Id.* at 1045. These issues are fact intensive and are thus inappropriate for resolution on a motion to dismiss. *See, e.g.*, *Optronic*, 20 F.4th at 484 (discussing trial evidence of market share, proximity to market power, barriers to entry, and market concentration in upholding jury verdict of Sherman Act violation); *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 129 F. Supp. 3d 1012, 1026-27 (D. Or. 2015) (discussing evidentiary proceedings to determine market definition).

### a.   Amoma adequately alleges the relevant market.

The Complaint adequately defines the relevant market for consumers booking hotels through online travel agencies. *See* Compl. ¶ 50. "A relevant market, for antitrust purposes, can be broadly characterized in terms of the cross-elasticity of demand for or reasonable interchangeability of a given set of products or services." *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 507 (9th Cir. 2010) (citations omitted). Although one could conceive of a more general market for hotel bookings, a submarket can exist "if it is sufficiently insulated from the larger market so that supply and demand are inelastic with the larger market." *Safeway Inc.*, 761 F. Supp. 2d at 888 (citation omitted). Courts "consider whether the product and its substitutes are reasonably interchangeable by consumers for the same purpose, as well as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." *Id.* (citation omitted).

As the Complaint alleges, the online hotel booking market has these features. Online

---

[12] Expedia does not assert that the Complaint lacks sufficient allegations regarding barriers to entry.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

hotel agencies attract consumers searching for the lowest available rates for hotels in a particular area. *See* Compl. ¶ 24. Contrary to Expedia's assertion otherwise (Mot. at 15), the Complaint identifies reasons that online travel agencies are not interchangeable with direct hotel bookings, and therefore are a separate product market: they allow consumers to participate in loyalty programs without tying themselves to a particular hotel brand, Compl. ¶ 29, and their advertising leads consumers to believe that they will receive a better deal through the online travel agency than they would booking directly with a hotel. *Id.* ¶ 28.

Moreover, even if online travel agencies and hotel websites were to be viewed as a general product market, online travel agencies are a "well-defined submarket" which constitutes a product market for antitrust purposes. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)); *Newcal*, 513 F.3d at 1045 (noting that a complaint need not establish that a submarket is distinct from a general product market). Online travel agencies are generally recognized and measured as a sector distinct from hotel websites. *See* Compl. ¶¶ 27-28. Further, from a consumer perspective, the various online travel agencies are reasonably interchangeable, regardless of the specific hotel or hotel locations the customer hopes to book. *Id.* ¶ 30. The online travel agencies provide similar booking experiences, and they even often advertise the exact same rate. *Id.* Consumers in the online hotel booking market are primarily attracted to the hotel booking platform that they perceive to be offering the best price: if one online travel agency advertises a higher price than another, consumers will book the hotel they desire with the travel agency offering the lower price. *Id.*

### b.   Expedia dominates the relevant market.

The Complaint also sufficiently alleges Expedia's dominant share of the market. In one case, the Ninth Circuit held that a 44% market share was sufficient as a matter of law to support a finding of market power for attempted monopolization. *See Rebel Oil*, 51 F.3d at 1438. But it has cautioned courts to "be wary of the numbers game of market percentage when considering

attempt-to-monopolize claims." *Id.* at 1438 n.10 (quoting *Dimmitt Agri Indus., Inc. v. CPC Int'l, Inc.*, 679 F.2d 516, 533 (5th Cir. 1982)). Instead, the Ninth Circuit has instructed courts to analyze "market share, entry barriers and the capacity of existing competitors to expand output" when considering market power for attempt-to-monopolize claims.[13] *Id.* When a lower market share percentage is combined with other market characteristics such as high entry barriers (discussed in Section IV.A.4.c. below) and/or anticompetitive conduct, courts have found as low as a 20% market share sufficient to show attempted monopolization.[14]

The authorities Expedia cites in this regard do not support dismissal of Amoma's Sherman Act claim. In addition to *Rebel Oil* and *Rutman*, discussed in footnote 13, Expedia cites *Ceiling & Interior Systems Supply, Inc. v. USG Interiors, Inc.*, 878 F. Supp. 1389 (W.D. Wash. 1993), *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318 (D.N.J. 1999), and *Zunum Aero, Inc. v. Boeing Co.*, No. C21-0896JLR, 2022 WL 2116678 (W.D. Wash. June 13, 2022). Mot. at 15 & n.15. *Ceiling & Interior Systems* does not deal with pleading requirements, but instead grants summary judgment due to the plaintiff's failure to define the relevant market. 878 F. Supp. at 1394. *Zunum* also involves a failure to define the market. 2022 WL 2116678, at *8. Expedia does not dispute that the Complaint alleges the relevant market. In *Syncsort*, the court dismissed the claim because the plaintiff's "vague allegation of 'control' is the closest [it] comes to alleging market share." The Complaint here goes much further, alleging not only Expedia's control over the global and U.S. markets, Compl. ¶¶ 49-50, 53-55, but also control of significant resources through its ownership of Trivago and agreements with hotel chains, and substantial

---

[13] Expedia ignores this instruction when it claims that the Complaint lacks allegations of market power required by *Rebel Oil* and *Rutman*. Mot. at 15. *Rutman* imposes no specific requirement for intent to monopolize claims and acknowledges that proof of specific intent and anticompetitive conduct, both of which are alleged in the Complaint, may be sufficient. 829 F.2d at 736. *Rebel Oil* is a summary judgment case and does not address pleading requirements at all. Rather, *Rebel Oil* discusses different ways market power may be shown, one of which includes establishing a dominant share of the market. 51 F.3d at 1434. The court cautioned against engaging in a "numbers game" in this area and stressed the factual nature of the inquiry. *Id.* at 1434-38. Nothing in *Rebel Oil* creates a pleading requirement that is "fatal" to Amoma's claim.

[14] *See Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1298, 1309 (9th Cir. 1982) (finding 24% market share and attempted monopolization on basis of anticompetitive conduct); *Dimmitt Agri Indus.*, 679 F.2d at 533 (stating that market shares of 20% may raise attempted monopolization liability, depending on other characteristics of market); *Meridian Project Sys., Inc. v. Hardin Constr. Co.*, No. CIV.S-04-2728FCDDAD, 2005 WL 2615523, at *4 (E.D. Cal. Oct. 14, 2005) ("Thus, CMIC's allegation of 37% market share may be adequate if combined with allegations of high entry barriers or anticompetitive conduct.").

anticompetitive conduct. *Id.* ¶ 52.

Thus, the Complaint adequately alleges Expedia's market share, particularly considering the high barriers to entry in the online hotel agency market. While Expedia's exact share of the market can only be known through discovery, the Complaint cites facts that strongly suggest that its share is significant. Expedia owns a large number of online hotel travel agencies which in turn receive a large portion of all hotel bookings made through such agencies. *Id.* ¶ 121. Its share of the U.S. online travel agency market is known: In 2018, one industry analysis site projected it to capture a major share of gross bookings (which include airline and other travel bookings, in addition to hotel bookings). *Id.* ¶ 53. Through its various brands, Expedia was estimated to control nearly half of the entire U.S. online hotel booking ecosystem in 2016 and 2017, and nearly two-thirds of the bookings on online travel agencies in the United States. *Id.* In that time, Expedia was the top national TV advertisers for online travel. *Id.* ¶ 54. It is reasonable to infer that the national figures reflect global trends; the U.S. is the largest travel market in the world. *Id.* Expedia's market power is bolstered by its control of a major hotel metasearch provider (which allows it to control which prices customers see), exclusive agreements with major hotel chains (which allow it to set available rates), and ownership of its own competitors. *Id.* ¶¶ 52, 55, 112.

### c. Amoma adequately alleges high barriers to entry.

Barriers to entry include "factors in the market that deter entry while permitting incumbent firms to earn monopoly returns," such as "control of an essential or superior resource" and "entrenched buyer preferences for established brands." *Vesta Corp.*, 129 F. Supp. 3d at 1029 (citation omitted). The Complaint alleges high barriers to entry in the online travel agency market. It is difficult to enter the online hotel booking platform market, because one must establish access to hotel rooms at competitive rates. Compl. ¶ 31. Expedia and Booking collect their hotel offers primarily through agreements with major hotel providers (which themselves control a large portion of the hotel industry). *Id.* Generally speaking, these booking platforms

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   either purchase rooms at a discount rate and apply a markup or receive a commission from the

2   hotel for directing customers to them. *Id.* Either way, their agreements guarantee rate parity,

3   which prevents hotels from offering lower rates to other online travel agencies and consumers.

4   *Id.* ¶¶ 57-59. A potential entrant must have the significant resources needed to advertise

5   sufficiently. *Id.* ¶ 27. Finally, Expedia's control over Trivago—a major platform for online hotel

6   booking agencies—allows it to further mediate the participation of new market entrants. Given

7   these significant barriers, Expedia's large market share suffices to state a claim for attempted

8   monopolization.

9   **B.   Amoma' Washington CPA Claim Is Well Pled and Is Not Duplicative of Its**
10       **Sherman Act Claim.**

11          Expedia's primary argument against Amoma's Washington CPA claim appears to be that

12   the claim is congruent with its Sherman Act claim and therefore if the Sherman Act claim is

13   dismissed, the Washington CPA claim must be dismissed as well. Mot. at 16. Expedia also

14   argues that the Complaint insufficiently alleges the elements of a Washington CPA claim. *Id.* at

15   16 n.17. Both arguments fail.

16          On the first point, Expedia mistakenly relies on *Omega Environmental, Inc. v. Gilbarco,*

17   *Inc.*, 127 F.3d 1157, 1165 n.8 (9th Cir. 1997). In *Omega*, the Washington CPA claim at issue

18   was premised on exclusive dealing in violation of RCW 19.86.050. Because RCW 19.86.050 is

19   "substantially similar to the Clayton Act," the court concluded that its conclusions on the

20   Clayton Act claim also disposed of the Washington CPA claim. *Id.*

21          Unlike the claim in *Omega*, Amoma's Washington CPA claim is not premised only on

22   alleged monopolization in violation of Section 2 of the Sherman Act (or Washington's analog,

23   RCW 19.86.040). Rather, Plaintiff alleges violations of the broad proscription under RCW

24   19.86.020 against "[u]nfair methods of competition and unfair or deceptive acts or practice[.]"

25   Compl. ¶¶ 127-31. These include misleading statements to Amoma regarding the purpose and

26   operation of the bid modifiers, *id.* ¶¶ 78-80, 84; the random use of bid modifiers, which made it

impossible for Amoma to evaluate the operation of the bid modifiers and adapt its practices to them, *id.* ¶¶ 89-91; the failure to report accurate and timely data to Amoma, *id.* ¶¶ 94-97; the manipulation of Amoma's bid modifiers so as to decrease bookings most profitable to Amoma, *id.* ¶ 99; and, false assurances of support for Amoma during discussions of an acquisition, followed by the abrupt termination of those discussions, *id.* ¶¶ 101-02.

The Washington Supreme Court has repeatedly emphasized the breadth of conduct that may constitute a Washington CPA claim. *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787 (2013) (claim may be predicated on "a per se violation of a statute . . . or an unfair or deceptive act or practice not regulated by statute but in violation of the public interest"); *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 48 (2009) ("It is impossible to frame definitions which embrace all unfair practices. There is no limit to human inventiveness in this field.") (citation omitted). The conduct alleged in the Complaint clearly gives rise to a Washington CPA claim. Because Plaintiff's allegations here go beyond the Sherman Act violations, *Omega* is simply inapposite, and a dismissal of Plaintiff's Sherman Act claim would not mandate dismissal of the Washington CPA claim.[15]

Expedia's' assertion that Amoma has failed to allege the elements of a Washington CPA claim is no more persuasive. The elements of such a claim have been clearly articulated by the Washington Supreme Court: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Klem*, 176 Wn.2d at 782 (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986)). As noted above, the Complaint alleges a number of specific unfair or deceptive acts. It further alleges that these were committed by Expedia in the course of trade or commerce and through its subsidiary, Trivago, for the purpose, and with the effect, of bankrupting Amoma and squeezing it out as a competitor. Compl. ¶¶ 128-30. Amoma further alleges that Expedia's actions impacted the public interest by denying consumers access

---

[15] For the reasons discussed in Section IV.A above, Amoma has stated a plausible Sherman Act claim, which renders Expedia's Washington's CPA argument moot.

PL. AMOMA'S OPP'N TO DEF. EXPEDIA INC.'S MOT. TO
DISMISS THE COMPL. PURSUANT TO FRCP 12(b)(6) - 18
(2:23-cv-00983-BJR)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

to the low-cost hotel rates that had been offered by Amoma. *Id.* ¶¶ 64-65, 109. Amoma has amply alleged the elements of its Washington CPA claim.

## C. Plaintiff's Claims Are Not Time-Barred.

As Expedia notes, a cause of action accrues when "a defendant commits an act that injures" a plaintiff's business. Mot. at 16-17 (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971)). Bid modifiers were not launched for Amoma before July 1, 2019. Compl. ¶ 85. It is impossible for Amoma's business to have been injured prior to July 1, 2019, which is within the four-year limitations period.[16]

Moreover, the injury to Amoma and its business was compounded by additional actions taken during July to September, 2019 in connection with the implementation of the bid modifiers. The bid modifiers were applied in such a way that Amoma could not measure their impact. *Id.* ¶¶ 91, 93. Even by August 20, 2019, Trivago had not reported to Amoma the data necessary for it to compete in the bid modifier market. *Id.* ¶ 90. In late August, 2019, Trivago took control of Amoma's bid modifiers, but did so in a manner that further injured Amoma. *Id.* ¶ 100.

Expedia's assertion that Amoma "was aware of the single act it now challenges— [T]rivago's introduction of bid modifiers" prior to June 30, 2019, Mot. at 17, makes no sense. The introduction did not occur until after June 30, 2019, so it was impossible for Amoma to have been aware of it prior to that date. Moreover, under the Washington CPA, Amoma also complains of the additional deceptive and unfair actions that occurred during July through September. While Amoma received in the weeks preceding July 1, 2019 certain limited information regarding plans for adoption of some sort of bid modifiers, those plans did not injure Amoma's business. It was only when the bid modifiers were adopted and implemented as described in the Complaint from July to September, 2019, that Amoma's business was injured and the cause of action accrued under the rule announced in *Zenith Radio Corp.*

---

[16] Both the Sherman Act and Washington CPA claims are subject to four-year statutes of limitations. 15 U.S.C. § 15b; RCW 19.86.120.

PL. AMOMA'S OPP'N TO DEF. EXPEDIA INC.'S MOT. TO
DISMISS THE COMPL. PURSUANT TO FRCP 12(b)(6) - 19
(2:23-cv-00983-BJR)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1          This is not a case in which the injury occurred outside the statutory period and was only

2    later discovered. As a result, Amoma bears no burden to plead or establish fraudulent

3    concealment.[17] Nonetheless, the Complaint does so. In May, 2019, Amoma was assured that the

4    bid modifiers would afford more granularity and flexibility, optimize return on advertising, and

5    enable it to compete at a much higher level. *Id.* ¶¶ 78-79, 81. Amoma was further assured that it

6    would be part of an "exclusive group of advertisers" to whom the bid modifiers would be made

7    available, and that the bid modifiers would be implemented slowly. *Id.* ¶¶ 82-83. All of these

8    were false statements made by Expedia through Trivago to conceal the anticompetitive

9    objectives of the bid modifiers. *Id.* ¶ 115. It was impossible for Amoma to ascertain the falsity of

10   these statements and the anticompetitive nature of Expedia's scheme—or to know or experience

11   the impact the bid modifiers, as implemented, would have on Plaintiffs' business—until

12   September 2019. *Id.* ¶ 116. Amoma's claims are not barred by the statute of limitations.

13                          **V.  CONCLUSION**

14         The Court should DENY Expedia's Motion to Dismiss. To the extent the Court finds that

15   the Complaint fails to allege a claim, or portion of a claim, Amoma respectfully requests leave to

16   amend.

---

[17] As explained in the text, Amoma's causes of action did not accrue before July 1, 2019. Even if they had, the implementation of the bid modifiers and subsequent acts that occurred in July through September, 2019, were new and independent actions that injured Amoma from which the statutory period commenced to run. *See Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014) (overt act injuring plaintiff that occurs during statutory period constitutes continuing violation of the antitrust laws, and statute of limitations commences to run from such act).

PL. AMOMA'S OPP'N TO DEF. EXPEDIA INC.'S MOT. TO
DISMISS THE COMPL. PURSUANT TO FRCP 12(b)(6) - 20
(2:23-cv-00983-BJR)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DATED this 20th day of October, 2023.

KELLER ROHRBACK L.L.P.

*/s/ Lynn Lincoln Sarko*
Lynn Lincoln Sarko, WSBA #16569
Ryan P. McDevitt, WSBA #43305
Adele A. Daniel, WSBA #53315
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Tel.: (206) 623-1900
lsarko@kellerrohrback.com
rmcdevitt@kellerrohrback.com
adaniel@kellerrohrback.com

*/s/ Gary A. Gotto*
Gary A. Gotto (*pro hac vice*)
3101 N Central Avenue, Suite 1400
Phoenix, AZ  85012
Tel.: (602) 248-0088
ggotto@kellerrohrback.com

*Attorneys for Plaintiff Amoma*

PL. AMOMA'S OPP'N TO DEF. EXPEDIA INC.'S MOT. TO
DISMISS THE COMPL. PURSUANT TO FRCP 12(b)(6) - 21
(2:23-cv-00983-BJR)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384