THE HONORABLE BARBARA J. ROTHSTEIN

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
IN SEATTLE

| | |
|---|---|
| The OFFICE CANTONAL DES FAILLITES DE LA REPUBLIQUE ET DU CANTON GENEVE, acting in its capacity as representative in the bankruptcy of AMOMA SARL, a Swiss limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>EXPEDIA, INC.,<br><br>Defendant. | NO. 2:23-cv-00983-BJR<br><br>**EXPEDIA, INC.'S REPLY TO AMOMA SARL'S OPPOSITION TO THE MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(b)(6)** |

REPLY TO OPPOSITION - i
(Case No. 2:23-cv-00983)

**MORGAN LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ................................................................................................................... 2

    A. The Complaint Fails to Allege Facts Supporting a Claim Against *Expedia* for *trivago's* Alleged Conduct. ............................................................................ 2

    B. The Complaint Fails to Support a Sherman Act Claim ......................................... 4

        1. No Alleged Facts Make Plausible that Expedia Is Likely to Monopolize the Asserted "Global Online Hotel Booking" Market ............ 4

        2. trivago's Redesign of Its Bidding System Was Not Exclusionary ............. 5

        3. Injury to Amoma Is Not Injury to Competition. ........................................ 8

        4. No Specific Intent to Monopolize ............................................................... 8

    C. Amoma's Washington Consumer Protection Act Claim Should Be Dismissed ............................................................................................................... 9

    D. Amoma's Claims Are Time-Barred ....................................................................... 9

III. CONCLUSION ................................................................................................................ 10

REPLY TO OPPOSITION - ii
(Case No. 2:23-cv-00983)

**MORGAN LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

## I.  INTRODUCTION

Amoma was a Swiss company that advertised its hotel booking services on trivago, a Dutch company that operates a travel website. More than four years ago, trivago decided to adopt "bid modifiers," which gave advertisers greater control over how and when they would spend money for ads. Amoma—and only Amoma—was unable to adapt to these changes and allegedly went out of business as a result. Amoma filed for bankruptcy protection in Switzerland and sued trivago based on these allegations in a pending French action. The present suit against Expedia is nothing more than a baseless attempt to use the antitrust and consumer protection laws in the U.S. to extract funds from Expedia because of its majority ownership of trivago. The Court should dismiss the Complaint for the reasons set forth in the Motion to Dismiss and below.

First, the Complaint fails to allege facts sufficient to make plausible that Expedia is liable for the actions of trivago. Amoma simply alleges that Expedia *might have* or *could have* directed trivago to adopt bid modifiers through its majority ownership of trivago. Stripped of its conclusory rhetoric, the Complaint does not allege facts indicating that Expedia *actually* directed trivago to take such actions. Rather, Amoma conflates these two separate legal entities in its Opposition to obscure the fact that its claims against Expedia are based only on Expedia's ownership interest in trivago. Under well-settled corporate law, however, a parent such as Expedia is not liable for the actions of its subsidiary based on its ownership role.

Second, even if Expedia could be held liable for trivago's actions, which it cannot, the Complaint fails to support the Sherman Act claim against Expedia for attempted monopolization of an alleged global online hotel booking market. Amoma has failed to allege facts indicating that: (i) Expedia has a dominant share of the asserted market or why the market should not include obvious functional substitutes; (ii) trivago's actions were unlawfully exclusionary with no business justification; (iii) trivago's conduct harmed competition, as opposed to just a single company; and (iv) Expedia had the requisite specific intent to monopolize.

Third, the Complaint fails to allege facts supporting required elements of a Washington

REPLY TO OPPOSITION - 1
(Case No. 2:23-cv-00983)

MORGAN LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

Consumer Protection Act ("CPA") claim. Amoma's claim is based on alleged misrepresentations by trivago to Amoma—not to the public or Washington residents—and there is no allegation that Expedia directed trivago to make such statements or that it was even aware of trivago's interactions with Amoma at the time.

Finally, the Complaint bases its allegations on conduct that began well before July 1, 2019, so its claims are barred by the statute of limitations.

Accordingly, the Court should dismiss Amoma's claims under the Sherman Act, 15 U.S.C. § 2, and the CPA, Wash. Rev. Code. § 19.86.020.

## II.   ARGUMENT

The Complaint asserts that Amoma failed because *trivago* made certain changes to its advertising bidding system, but the Opposition points to no alleged facts that, if proven, would establish that: (i) Expedia should be liable for trivago's actions, (ii) trivago's actions violated either the Sherman Act or the CPA, or (iii) Amoma's claims are not time barred.[1]

**A.   The Complaint Fails to Allege Facts Supporting a Claim Against *Expedia* for *trivago's* Alleged Conduct.**

The Opposition argues that Expedia is liable for harming Amoma because Expedia might have used its control over trivago to require trivago to adopt bid modifiers. Dkt. #21 at pp. 7–8. This argument fails for at least two reasons.

First, the Complaint alleges no facts indicating that Expedia *actually required* trivago to change its advertising system. Conceding the lack of alleged facts directly establishing Expedia's supposed role, the Opposition argues Expedia might have required trivago to adopt bid modifiers because (i) "Trivago has been majority-owned by Expedia since 2013" and appoints "a majority of the members of Trivago's Supervisory Board," and (ii) "circumstantial evidence" indicates that

---

[1] The Opposition often refers to "Expedia's conduct" when referencing actions allegedly taken instead by trivago. *See, e.g.*, Dkt. # 21 at 6, 10, 18, 20. The Court should reject this obvious effort to divert attention from its failure to allege facts regarding conduct by Expedia.

REPLY TO OPPOSITION - 2
(Case No. 2:23-cv-00983)

MORGAN LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

1    Expedia had an incentive to do so. Dkt. # 21 at pp. 7–9.[2] But the Supreme Court in *Bell Atlantic*
2    *Corp. v. Twombly* held that a plaintiff fails to state an antitrust claim where there is an "obvious
3    alternative explanation" for the alleged conduct. 550 U.S. 544, 567 (2007) (citing both common
4    sense and allegations in the complaint for such alternative explanations). As discussed in more
5    detail in Section B.2, trivago similarly had obvious, legitimate business reasons for improving its
6    advertising system.

7          Second, even if Amoma had adequately alleged that Expedia directed trivago to adopt bid
8    modifiers, which it has not, Expedia still could not be liable for trivago's actions under basic
9    principles of corporate law:

> [I]t is hornbook law that the exercise of the "control" which stock ownership gives to the stockholders . . . will not create liability beyond the assets of the subsidiary. That "control" includes . . . doing of all other acts incident to the legal status of stockholders.

*United States v. Bestfoods*, 524 U.S. 51, 61–62 (1998) (cleaned up) (citations omitted). Amoma's claims, if any, lie against trivago, the entity that took the actions that allegedly resulted in its injury (and the entity it has sued in France). The fact that Expedia was a majority shareholder or that Expedia personnel were on trivago's Supervisory Board cannot serve as the basis for direct liability.[3] *Bestfoods*, 524 U.S. at 69–72 ("[M]onitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures, should not give rise to direct liability."); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) ("[C]orporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary."). At most, the Complaint alleges facts consistent with arm's length discussions between trivago and Expedia, a majority shareholder, regarding a product change that could be beneficial to trivago's

---

[2] The Opposition argues that "Expedia, and not Trivago, benefitted from the new system"; trivago met with Expedia at some point in early 2019; and Expedia had a distribution "agreement with Marriott." Dkt. # 21 at p. 9. That is the sum total of the allegations against Expedia, and it falls well short of being enough.

[3] In fact, Expedia's right to control trivago is unusually limited due to specific governance provisions and Dutch law. *See* Dkt. # 18 at p. 11.

REPLY TO OPPOSITION - 3
(Case No. 2:23-cv-00983)

MORGAN LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

business. Accordingly, Amoma's claims against Expedia should be dismissed out of hand.[4]

**B.     The Complaint Fails to Support a Sherman Act Claim**

Even if Amoma had adequately alleged that Expedia should be liable for trivago's actions, which it has not, the Complaint fails to allege facts supporting the required elements of Amoma's Section 2 Sherman Act claim.

### 1.   No Alleged Facts Make Plausible that Expedia Is Likely to Monopolize the Asserted "Global Online Hotel Booking" Market

Amoma has failed adequately to allege facts supporting a likelihood of Expedia monopolizing a "global online hotel bookings," which it limits to bookings by online travel agencies, Dkt. # 21 at p. 13, for two reasons.

First, Amoma must allege facts indicating that Expedia has a sufficiently dominant share of the asserted relevant market to indicate a likelihood of successful monopolization, and courts typically require a share of 50% or more. Dkt. # 18 at p. 14 (citing cases). But the Opposition concedes that the allegations only "suggest that [Expedia's global] share is significant" and bases this assertion solely on Expedia's alleged share in the U.S. Dkt. # 21 at p. 16. Such vague allegations of Expedia's share of hotel bookings in the U.S. fail to indicate a dangerous probability of monopolization in the alleged *global* market. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 736 (9th Cir. 1987) (dismissing a Section 2 claim for lack of allegations of "monopoly power in the relevant geographical market"). Amoma's bald assertion that U.S. figures "reflect global trends," particularly in a case involving a Swiss and a German-based company, is baseless.

Second, Amoma excludes from its purported relevant market all hotel bookings, including online hotel bookings, except those made through "online travel agencies" ("OTAs"). Dkt. # 21 at

---

[4] Any claims arising out of trivago's alleged conduct are better addressed in Amoma's lawsuit against trivago in France based on the same conduct by trivago, which avoids concerns of inconsistent rulings and comity. Dkt. # 21 at p. 3 n.2. Amoma's reservation of a right to act against trivago in a related French litigation in December 2019, Dkt. # 21 at p. 3 n.2, is irrelevant because it filed proceedings in France against trivago in June 2022 regarding the same trivago actions challenged here.

REPLY TO OPPOSITION - 4
(Case No. 2:23-cv-00983)

MORGAN LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

pp. 13–14. While the Opposition seeks to justify these exclusions based on allegations that OTAs offer loyalty programs and promote their services, *id*. at 14, the Complaint acknowledges that consumers frequently book through hotel websites. Dkt. #1 ¶ 27 ("30% of [online hotel bookings] were made directly through the hotels"). Where, as here, the Complaint fails to allege a market based on "reasonable interchangeability and cross-elasticity of demand" and fails to "encompass all interchangeable substitute products, . . . the relevant market is legally insufficient and a motion to dismiss may be granted." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436–37 (3d Cir.1997).[5]

### 2.     trivago's Redesign of Its Bidding System Was Not Exclusionary

Yet another independent reason why Amoma's Sherman Act claim fails is that trivago's actions do not constitute unlawful exclusionary conduct. Simply put, the antitrust laws permit companies to redesign their products to improve them. Dkt. # 18 at pp. 8–9. Amoma seeks to avoid this well-established doctrine by arguing that there was "no legitimate business reason [that] justified the changes," Dkt. # 21 at p. 2, and that trivago's revised bidding system should be deemed a constructive refusal to deal, *id.* at p. 6. Both arguments lack merit.

#### a)     The Complaint Identifies Legitimate Business Reasons for trivago's Revised Bidding System

Contrary to the argument in the Opposition, and as was the case in *Twombly*, the Complaint alleges facts indicating that trivago had legitimate reasons to change its advertising bidding system. For example, the Complaint alleges that Booking, one of trivago's biggest advertisers, had "cut its advertising spending" on trivago, Dkt. # 1 ¶ 75, so trivago had a business reason to induce Booking and other advertisers to spend more on trivago. The Complaint further acknowledges that the modifications would enable "booking platforms to increase or decrease their cost-per-click bids depending on certain aspects of the customer's search," including "length of stay" and "time to

---

[5] Amoma's argument for a "submarket," Dkt. # 21 at p. 14, fares no better as the Complaint still needs to allege facts justifying the exclusion of obvious substitutes based on a lack of reasonable interchangeability, which it fails to do.

REPLY TO OPPOSITION - 5
(Case No. 2:23-cv-00983)

MORGAN LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

travel," that would enable "more specific targeting." Dkt. #1 ¶¶ 79, 81.[6] Indeed, the Complaint alleges that the "real aim" of trivago's changes was to "attract Booking back to the site," *id.* ¶ 77, and that "Trivago did admit that it developed modifiers in an effort to 'strengthen[] our relationship with our major advertisers,' i.e., *Booking* . . . ." *Id.* ¶ 80 (emphasis added).[7]

Amoma's assertion in its Opposition that the modifications "did not benefit [trivago]," is also directly contradicted by the allegations in its Complaint. Dkt. # 21 at p. 1. For example, the Complaint alleges that "[t]he bid-modification system prioritized hotel booking platforms that paid the most to Trivago," Dkt. #1 ¶ 110, and Amoma's "cost per click went up drastically" following the changes, Dkt. #1 ¶ 101. Encouraging its customers, including Amoma, to spend more would certainly benefit trivago.

Amoma also has failed to allege facts supporting the assertion that its difficulties in adjusting to trivago's new system indicate that trivago sought to drive Amoma out of business. Dkt. # 21 at pp. 9–10. trivago had warned that the new system would require "more effort," and multiple advertisers, not just Amoma, ran into initial "hiccups." Dkt. #1 ¶¶ 81, 108. While "it took advertisers [ ] a different amount of time to train their algorithms to the new environment," *id.*, there is no allegation that advertisers other than Amoma were unable to adjust.[8]

Where, as here, the "existence of valid business reasons . . . is a foregone conclusion requiring no further analysis," the court should dismiss a Section 2 claim. *See SmileCare Dental Grp. v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 786 (9th Cir. 1996), *cert. denied*, 519

---

[6] Amoma refers to the allegations in paragraphs 77–80 of the Complaint as pretextual marketing materials, but the Complaint alleges no facts to support such an assertion. For example, the Complaint contains no alleged facts indicating that trivago did not enable more granular targeting of ads.

[7] Amoma's argument that it has alleged only that Booking was unhappy with trivago's advertising, Dkt. # 21 at p. 6, is a red herring. trivago's alleged changes plausibly sought to address Booking's dissatisfaction regardless of whether Booking requested the specific changes.

[8] The Complaint does not—and could not—allege that the trivago changes (i) were unusual or that other travel-related sites such as Google, Kayak, or Tripadvisor had not adopted similar bid modifiers, (ii) were not profitable for trivago after other advertisers adjusted, or (iii) were dropped by trivago after Amoma went out of business (which trivago presumably would have done if the changes hurt trivago and were made solely to hurt Amoma). Also, Amoma's argument that trivago "developed an entirely new system for advertisers to promote their hotel rates on its platform," Dkt. # 21 at p. 2, underscores that initial challenges were to be expected for a major technological change.

REPLY TO OPPOSITION - 6
(Case No. 2:23-cv-00983)

MORGAN LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

U.S. 1028 (1996).

### b) The Complaint Does Not Support a Constructive Refusal to Deal Claim.

Amoma's reliance on *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), Dkt. # 21 at pp. 6–7, is without merit. Even when explicit, a refusal to deal claim "is at or near the outer boundary of § 2 liability." *Verizon Commc'ns Inc. v. Law Offs. of Curtis v. Trinko, LLP*, 540 U.S. 398, 409 (2004). Here, Amoma seeks to infer a refusal to deal from a product design decision, but courts consistently refuse to second-guess product design decisions, particularly where, as here, the design has a facially plausible justification. Dkt. # 18 at p. 8 (citing cases).

Amoma's attempt to distinguish the Ninth Circuit's decision in *Aerotec International, Inc. v. Honeywell International, Inc.*, 836 F.3d 1171 (9th Cir. 2016), is unavailing. Both here and in *Aerotec*, the plaintiff alleged a de facto (*i.e.*, not actual) refusal to deal. *Compare Aerotec*, 836 F.3d at 1183 ("Aerotec attacks Honeywell's business terms as a 'de facto' refusal") *with* Dkt. # 21 at pp. 6–7 (admitting that "Trivago[ ] did not refuse outright to deal with Amoma"). Here, as in *Aerotec*, the plaintiff "simply did not like the business terms offered by" the defendant, but those terms "can hardly be characterized as so onerous as to be tantamount to the conduct in *Aspen Skiing*." *Aerotec*, 836 F.3d at 1184.[9]

Amoma's reliance on *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124 (9th Cir. 2004) is similarly misplaced. As was the case in *MetroNet*, and as Amoma admitted in its Complaint and Opposition, trivago did not refuse to sell to Amoma, but instead sold its services to Amoma on the same terms that it sells to other advertising customers. *See MetroNet*, 383 F.3d at 1133. Amoma is, thus, asking this Court to specify how trivago should sell its services, "a role the Supreme Court has deemed courts ill-suited to perform." *Id*. at 1133–34 (citing *Trinko*, 540 U.S. at 408). This Court also should find no "actionable antitrust claim under the Supreme Court's existing refusal

---

[9] "As the Supreme Court has repeatedly emphasized, there is 'no duty to deal under the terms and conditions preferred by [a competitor's] rivals . . . .'" *Id*. (quoting *Pac Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 457 (2009)).

REPLY TO OPPOSITION - 7
(Case No. 2:23-cv-00983)

to deal precedents as explained and limited by [*Trinko*]." *Id*. at 1134.[10]

### 3. Injury to Amoma Is Not Injury to Competition.

Finally, without allegations of harm to any other company, Amoma resorts to arguing that Amoma itself was critical to preserving competition in the alleged market for "global online hotel bookings." Dkt. # 21 at p. 10. But the Complaint alleges no non-conclusory facts in support of this naked and implausible assertion. For instance, Amoma has not alleged facts indicating it had a significant share of the market or that trivago was an important advertising outlet for any hotel booking service other than Amoma. Indeed, the Complaint alleges no facts indicating that Expedia's share has increased due to trivago's alleged conduct. Without more, the exclusion of a single company is not injury to competition. *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1200 (9th Cir. 2012) ("Plaintiffs may not substitute allegations of injury to the claimants for allegations of injury to competition.").

### 4. No Specific Intent to Monopolize

Amoma cannot state a Sherman Act claim against Expedia for the additional reason that there are no alleged facts supporting an inference that Expedia acted with the required specific intent to monopolize the asserted relevant market—as opposed to encouraging trivago to improve its advertising system. *See Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 843 F.3d 1225, 1244 (10th Cir. 2016) (plaintiff carries "burden to establish that the defendants acted with the specific intent to monopolize").[11] Nor can Amoma infer Expedia's specific intent from actions allegedly taken by trivago (such as shifting launch dates, troubled technical implementation, supposedly incomplete analytics, and inaccurate reporting, Dkt. # 21 at p. 12), both because they were trivago's (not Expedia's) actions and because it is normal for a major technological change to encounter some "hiccups" in the roll out.

---

[10] Regarding barriers to entry, Dkt. # 21 at p. 16–17, Amoma fails to point to any alleged facts indicating that other online hotel booking companies could not enter as quickly as Amoma did.

[11] *See Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 333 (D.N.J. 1999) ("[A]n antitrust plaintiff must plead . . . 'something more than an intent to compete vigorously[.]'") (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993) (other citations omitted)).

REPLY TO OPPOSITION - 8
(Case No. 2:23-cv-00983)

MORGAN LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

### C. Amoma's Washington Consumer Protection Act Claim Should Be Dismissed

Amoma's Opposition claims that it has alleged an antitrust claim against Expedia under RCW 19.86.040 as well as an "unfair or deceptive acts or practice[s]" claim under RCW 19.86.020. Dkt. # 21 at p. 17. Both of these CPA claims should be dismissed.

Amoma's antitrust claim under the CPA claim fails for the reasons stated above in Sections A and B, *supra*, and Expedia's Motion to Dismiss. *See State v. Black*, 100 Wash. 2d 793, 802–03, (1984) ("This consideration . . . warrants a narrower interpretation of the words 'unfair method of competition' than that given by federal courts").[12]

To the extent that Amoma asserts an "unfair and deceptive practices and acts" claim, the Complaint fails to support the five necessary elements.[13] For example, the alleged conduct did not have the required "capacity to deceive a substantial portion of the public." *Id.* at 785. Neither the alleged "false assurances of support for Amoma during discussions of an acquisition," nor the purported "misleading statement to Amoma regarding the purpose and operation of the bid modifiers," Dkt. # 21 at pp. 17–18, is alleged to have been communicated to the public. Accordingly, any asserted relationship between the parties' private dispute and the public interest is indirect, speculative, and insufficient to satisfy the CPA's requirements.

### D. Amoma's Claims Are Time-Barred

Amoma argues that "[i]t is impossible for Amoma's business to have been injured prior to July 1," Dkt. # 21 at p. 19, but the Complaint bases its claims significantly on alleged conduct prior to July 1, 2019, including that (i) trivago informed Amoma about the new bidding system in May 2019, Dkt. # 1 ¶ 78, and (ii) Amoma "contacted Trivago on June, 6, 2019, [regarding] communication and performance concerns" and again on June 23 regarding "the promised tracking features for bid modifiers," *id.* ¶¶ 86–87. Accordingly, Amoma's claims against Expedia are barred

---

[12] *See also Boeing Co. v. Sierracin Corp.*, 108 Wash. 2d 38, 56 (1987) ("Contracts entered for legitimate business purposes do not violate the Act.").

[13] These elements are (1) an unfair or deceptive act or practice that (2) occurred in the course of trade or commerce, (3) impacted the public interest, (4) injured the plaintiff's business or property, and (5) was caused by the defendant. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 784–85 (1986).

REPLY TO OPPOSITION - 9
(Case No. 2:23-cv-00983)

MORGAN LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224

by the statute of limitations.

## III.   CONCLUSION

Because Amoma declined to amend its complaint after the meet and confer process, the Court should dismiss the Complaint with prejudice.

DATED this 17th day of November, 2023.

**MORGAN, LEWIS & BOCKIUS LLP**

By: /s/ Angelo J. Calfo
    Angelo J. Calfo, WSBA #27079
    Gabriel Reilly-Bates, WSBA #52257
    1301 Second Avenue, Suite 2800
    Seattle, WA 98101
    Phone: (206) 274-6400
    Fax: (206) 274-6401

    Emails:
    angelo.calfo@morganlewis.com
    gabriel.reillybates@morganlewis.com

    *Counsel for Defendant, Expedia, Inc.*

**COVINGTON & BURLING LLP**

    /s/ Thomas O. Barnett
    Thomas O. Barnett
    Jeffeline Ermilus
    One CityCenter
    850 Tenth Street NW
    Washington, D.C. 20001
    Tel: (202) 662-5407
    Fax: (202) 778-5407

    Emails:
    tbarnett@cov.com
    jermilus@cov.com

    *Counsel for Defendant, Expedia, Inc.*

REPLY TO OPPOSITION - 10
(Case No. 2:23-cv-00983)

MORGAN LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200 FAX, (206) 407-2224